NATIONAL ASSOCIATION OF
RADIATION SURVIVORS, et
al., Plaintiffs–Appellees,

v.

Edward J. DERWINSKI, Secretary of the
Department of Veterans Affairs, et
al., Defendants–Appellants.

No. 92–15988.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 15, 1992.

Decided Nov. 24, 1992.

As Amended on Denial of Rehearing and
Rehearing En Banc
June 18, 1993.

Lowell V. Sturgill Jr., Dept. of Justice, Washington, DC, for defendants/appellants.

Gordon P. Erspamer, Morrison & Foerster, and Matthew L. Larrabee, Heller, Ehrman, White & McAuliffe, San Francisco, CA, for plaintiffs/appellees.

Before: CHOY, ALARCON and HALL, Circuit Judges.

CHOY, Circuit Judge:

A class of individuals with claims for Veterans' Administration ("VA") benefits based on exposure to ionizing radiation during service ("IR claimants/plaintiffs") challenges the constitutionality of a statute that limits to $10 the amount a claimant can pay an attorney representing him in pursuit of VA benefits. The United States District Court for the Northern District of California held that this fee limitation violates the IR claimants' procedural due process rights as well as their First Amendment right to free speech and to petition the government. We reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1983, plaintiffs—two veterans' organizations and four individuals—brought an action challenging the constitutionality of 38 U.S.C. §§ 3404 and 3405 (now codified as amended at 38 U.S.C. §§ 5904 and 5905), which limit the fee a veteran or his survivor may pay an attorney to assist him in prosecuting a claim before the VA to $10. The district court granted a nationwide preliminary injunction prohibiting the enforcement of the fee limit. *National Ass'n of Radiation Survivors v. Walters,* 589 F.Supp. 1302 (N.D.Cal.1984). The government appealed directly to the Supreme Court, and the Court reversed, holding that the fee limit was not unconstitutional on its face. *Walters v. National Ass'n of Radiation Survivors,* 473 U.S. 305, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985).[1] The Court left open the possibility of a constitutional attack on the fee limit as applied to particular classes of veterans. *See id.* at 337, 105 S.Ct. at 3198 (O'Connor, J., concurring) ("the Court, in reversing the lower court's preliminary injunction, does not determine the merits of the appellees' individual 'as applied' claims").

On remand, plaintiffs amended their complaint to assert that the fee limit was unconstitutional as applied to individuals with claims based on exposure to ionizing radiation. The district court certified the class of IR claimants. *National Ass'n of Radiation Survivors v. Walters,* 111 F.R.D. 595 (N.D.Cal.1986).[2] After extensive pretrial proceedings, the case went to trial.

During and after the trial Congress passed several pieces of legislation relevant to the plaintiffs' claims. Congress passed the Veterans' Judicial Review Act of 1988 ("JRA"), Pub.L. No. 100–687, 102 Stat. 4105 (1988). Prior to the enactment of the JRA a veteran could only appeal a benefits claim up to the Board of Veterans Appeals ("BVA"), an adjudicatory body within the VA. The JRA cre-

---

1. At the time direct appeal to the Supreme Court was proper under 28 U.S.C. § 1252. Congress has since amended the statute to make appeal to this court the appropriate recourse. *See* Pub.L. No. 100–352 § 1, 102 Stat. 662.

2. The class was defined as follows:
All persons who currently have pending or who file or re-open VA service-connected death and disability compensation 1 ("SCDD") claims based on exposure to nuclear radiation from government atomic bomb tests in the Marshall Islands or the Nevada Test Site or from the atomic bombs dropped on Hiroshima and Nagasaki in 1945 ("Ionizing Radiation Claims"). The class also includes all persons who are receiving or receive SCDD for an Ionizing Radiation Claim but: (1) whose compensation has been reduced or is threatened with reduction, or (2) who have formally contested, or formally contest, the disability rating issued by the VA or the period of retroactive compensation.
*National Ass'n of Radiation Survivors v. Walters,* 111 F.R.D. 595, 597–98 (N.D.Cal.1986).

ated the United States Court of Veterans Appeals ("CVA") to review decisions of the BVA. JRA §§ 4051, 4052(a), 102 Stat. at 4113. It also provided for judicial review of CVA decisions by the Court of Appeals for the Federal Circuit. *Id.* § 4092, 102 Stat. at 4120. In addition, the JRA amended the fee limitation by providing that a claimant may pay an attorney for services rendered after the BVA makes an initial decision about his claim. *Id.* § 104(a), 102 Stat. at 4108. This scheme allows the claimant to obtain a lawyer for appeals to the CVA and the Federal Circuit, or to conduct further administrative proceedings within the VA by reopening a claim.[3] *Id.* However, the amendment easing the fee limitation only applies to claimants who have filed a Notice of Disagreement on or after November 18, 1988.[4] *Id.* § 403, 102 Stat. at 4122. The JRA may moot the complaints of some IR claimants but it does not affect those who filed Notices of Disagreement before the effective date of the JRA.

Congress also passed the Radiation–Exposed Veterans Compensation Act of 1988, Pub.L. No. 100–321, 102 Stat. 485 (1988). This act creates a presumption that certain diseases, which manifest to a degree of ten percent within specified latency periods, are service-connected. If the veteran contracts a disease not listed in the statute or it remains latent beyond the specified periods, no presumption exists. This Act, therefore, does not affect the claims of all of the class plaintiffs. Moreover, those that it does affect are still subject to the fee limit.

Finally, Congress passed the Radiation Exposure Compensation Act, Pub.L. No. 101–426, 104 Stat. 920 (1990). This act provides for one-time payments of $50,000 to individuals who participated onsite in a test involving the atmospheric detonation of a nuclear device, developed a disease specified in the statute, and meet certain other criteria. The payment will be decreased by the amount of "any payment made pursuant to a final award of settlement on a claim" based on injuries resulting from exposure to radiation. Pub.L. No. 101–426, § 6(c)(2). The district court found that veterans' benefits may result in an offset of the lump sum payment. *National Ass'n of Radiation Survivors v. Derwinski,* 782 F.Supp. 1392, 1394 n. 1 (N.D.Cal.1992).

Because none of these statutes moot the claims of all of the class members, the district court found it necessary to pass on the constitutionality of the scheme as it applied to the remaining plaintiffs. The district court found that the fee limit, as applied to the class of IR claimants, was an unconstitutional deprivation under the Due Process Clause of the Fifth Amendment and the First Amendment's guarantee of the right to free speech and the right to petition the government for redress of grievances. *Derwinski,* 782 F.Supp. at 1412. The government appeals this ruling.

A main point of contention in this case is the alleged difficulty of pursuing an IR claim for benefits within the VA. In describing the procedure for processing service-connected disability or death ("SCDD") claims, the Supreme Court in *Walters* noted that "[t]he process is designed to function throughout with a high degree of informality and solicitude for the claimant." *Walters,* 473 U.S. at 311, 105 S.Ct. at 3184. A number of general regulations govern the procedure for examining SCDD claims.

A veteran applies for benefits by submitting a claim form to the local veterans agency. A three-person "ratings board" of the VA regional office reviews the claim application. A claimant is "entitled to a hearing at any time on any issue involved in a claim...." 38 C.F.R. § 3.103(c) (1991). These proceedings are ex parte. *Id.* § 3.103(a). The ratings board determines the extent of the veteran's disability and whether such disability is service-connected. The board is required to "assist a claimant in

---

3. A claim can be reopened for further proceedings before the VA if there is new material evidence that was not considered in the earlier adjudication of the claim. JRA § 3008, 102 Stat. at 4107.

4. When a veteran initially files a claim it goes before a ratings board at a regional VA office. If the ratings board denies the claim, the claimant can appeal that decision by filing a Notice of Disagreement.

developing the facts pertinent to [his] claim," *id.*, and to consider any evidence offered by the claimant. *Id.* § 3.103(d). Moreover, the board is required to resolve all reasonable doubts in favor of the claimant. *Id.* § 3.102.

After reviewing the evidence, the ratings board either denies the claim or assigns a disability rating upon which benefits are calculated. The board notifies the claimant of its decision, and the claimant may appeal the board's decision by filing a Notice of Disagreement with the local agency. If the local agency stands by its original decision, it issues a "Statement of the Case" that describes the facts and applicable law upon which its decision is based. The claimant may then appeal to the BVA. Before the amendments discussed above were enacted, the BVA's decisions were not subject to judicial review. *See Walters,* 473 U.S. at 311, 105 S.Ct. at 3184. Under the JRA, however, claimants who file a Notice of Disagreement on or after November 18, 1988 can appeal BVA decisions to the CVA and then to the Court of Appeals for the Federal Circuit while claimants who filed a Notice of Disagreement before November 18, 1988 do not have that option.

In addition to the general regulations, the VA has adopted regulations specifically dealing with IR claims pursuant to a mandate from Congress in the Veterans' Dioxin and Radiation Exposure Compensation Standards Act, Pub.L. No. 98–542, 98 Stat. 2725 (1984). Section 3.311b of Title 38 of the Code of Federal Regulations sets forth three requirements an IR claimant must meet in order to have the VA investigate his claim: (1) the veteran must have been exposed to ionizing radiation due to participation in the atmospheric testing of nuclear weapons, the occupation of Hiroshima or Nagasaki from September 1945 until July 1946, or other activities as claimed; (2) the veteran must have subsequently developed one of seventeen delineated diseases; and, (3) the veteran must

have developed the disease within a specified period of time.

If an IR claimant meets the criteria of § 3.311b, the VA will investigate the claim by gathering factual information and requesting an estimate from the Defense Nuclear Agency ("DNA") of the radiation dose the veteran was exposed to during service.[5] If any of the three requirements are not met the VA determines that the alleged disease did not result from ionizing radiation.

Various national veterans' organizations make available trained service representatives to assist claimants in developing and presenting their claims before the VA. These service representatives provide assistance free of charge, and any claimant who requests a representative will receive assistance.

## II. STANDARD OF REVIEW

■ The district court made a number of factual findings concerning the nature of IR claims. We review these factual findings for clear error. *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *United States v. Motamedi,* 767 F.2d 1403, 1405 (9th Cir.1985). The district court's conclusions regarding the due process and First Amendment claims present mixed questions of law and fact since they involve a determination of whether factual findings satisfy undisputed rules of law. *United States v. McConney,* 728 F.2d 1195, 1200, 1205 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). Normally, mixed questions of law and fact are reviewed *de novo* because they require the consideration of legal concepts. *Id.* at 1202. Because this is particularly true in a case involving constitutional rights, *id.* at 1203, we review the district court's conclusions regarding the due process and First Amendment claims *de novo.*[6]

---

5. A claimant may submit a separate radiation dose estimate from a "credible source." If the claimant's estimate is at least double the estimate prepared from the official military record, the matter is referred to an independent expert for the preparation of a separate dose estimate. *Id.* § 3.311b(a)(3).

6. Mixed questions of law and fact can be reviewed under the clearly erroneous standard if the concerns of judicial administration in a particular case favor a district court determination of whether the facts satisfy the legal standard. *Id.* at 1202. Plaintiffs assert that the clearly erroneous standard should be applied to the dis-

## III. DISCUSSION

### A. Due Process Claim

Our evaluation of the due process claim is controlled by *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Under *Mathews*, we must balance the government's interest in enforcing the fee limitation; the private interest affected by the limitation; the risk of an erroneous deprivation of IR benefits under the present VA system; and the probability that allowing veterans to retain counsel would avoid erroneous deprivations of IR benefits. *Id.* at 335, 96 S.Ct. at 903.

The district court applied the *Mathews* test and concluded that the government has no significant interest in retaining the fee limit, that the private interest in IR claims is great, that there is currently a high risk of erroneous deprivation of IR claims, and that the assistance of attorneys would sharply reduce the potential for error.[7] We find that the district court erred in its assessment of each of these factors.

### (1) The Government's Interest in the Fee Limit

■ The Supreme Court in *Walters* described the government's interest in the fee limit as follows: "the system for administering benefits should be managed in a sufficiently informal way that there should be no need for the employment of an attorney to obtain benefits to which a claimant was entitled, so that the claimant would receive the entirety of the award without having to divide it with a lawyer." *Walters,* 473 U.S. at 321, 105 S.Ct. at 3189. The Supreme Court in *Walters* accorded this government interest "great weight." *Id.* at 326, 105 S.Ct. at 3192.

On remand, the district court found that Congress had rejected this asserted interest when it passed the JRA by allowing veterans to pay attorneys' fees when pursuing claims after the initial BVA decision. *Derwinski,* 782 F.Supp. at 1408–09.[8] The government asserts that, far from rejecting that interest, in passing the JRA Congress reaffirmed the government's interest in the fee limitation because it *retained* the fee limit for administrative proceedings within the VA system up to the initial decision issued by the BVA.[9]

---

trict court's due process and First Amendment findings due to the size and complexity of the record in this case and the fact-intensive nature of the district court's ruling. Although the size and complexity of the record support applying a deferential standard to the district court's factual findings, precedent establishes that the *de novo* standard of review is appropriate for mixed questions involving constitutional issues. *Id.* at 1203 ("The predominance of factors favoring de novo review is even more striking when the mixed question implicates constitutional rights."); *United States v. Spokane,* 918 F.2d 84, 86 (9th Cir. 1990) *cert. denied,* —— U.S. ——, 111 S.Ct. 2888, 115 L.Ed.2d 1053 (1991); *Bay Area Peace Navy v. United States,* 914 F.2d 1224, 1227 n. 1 (9th Cir.1990) (mixed question of fact and law involving First Amendment free speech rights is subject to *de novo* review).

7. As a preliminary criterion for finding a procedural due process violation, the district court correctly concluded that both applicants for and recipients of SCDD benefits possess a constitutionally protected property interest in those benefits. *Derwinski,* 782 F.Supp. at 1395; *see Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (recipients of social security benefits have a constitutionally protected property interest);. *Gonzalez v. Sullivan,* 914 F.2d 1197, 1203 (9th Cir.1990) (applicant for social security benefits has a property interest in those benefits); *Ressler v. Pierce,* 692 F.2d 1212, 1214–16 (9th

Cir.1982) (applicants for federal rent subsidies have a constitutionally protected property interest).

8. The district court also found that the government's interest was weakened by recently issued VA regulations which provide that an attorney "may receive a fee or salary in excess of the statutory limit from an organization, governmental entity, or other disinterested third party for representation of a claimant." 38 C.F.R. § 14.-634(a). The district court stated that it could not "conceive of any rational government interest which would be served by effectively preventing individual claimants from retaining the assistance of counsel for adjudication of their VA claims when non-profit organizations may retain these same attorneys for the same purpose." *Derwinski,* 782 F.Supp. at 1409.

However, as the government points out, its interest in preventing veterans from having to divide their benefits awards with lawyers is unaffected by the recent VA regulations. Allowing a third party to pay an attorney to represent the veteran does not compromise the veteran's benefits award.

9. Even where the fee limit is inapplicable,·the attorney must submit his or her fee agreement to the BVA for review. JRA, § 104(a), 102 Stat. at 4108. The BVA may reduce the fee if it is "excessive or unreasonable." *Id.*

We agree with this contention and find that the district court misinterpreted the significance of the passage of the JRA in relation to the government's interest in the fee limit.

The legislative history of the JRA strongly supports this conclusion. The Committee Report on the Senate version of the bill, which Congress eventually passed after incorporating several portions of the House bill, stated that attorneys were unnecessary during initial administrative proceedings:

> [T]here would seem to be no need for the assistance of an attorney in order to initiate the claims process by completing and filing an application. Moreover, even if the initial decision is adverse, the Committee believes that it may be unnecessary for a claimant to incur the substantial expenses for attorney representation that may not be involved in appealing the case for the first time to the BVA. The claimant may well prevail, as many claimants currently do, without legal representation when the case is first before the BVA.

S.Rep. No. 418, 100th Cong., 2d Sess. at 63–64 (1988), U.S. Code Cong. & Admin. News p. 5782.

The Committee also reported that the bill was intended to maintain the system of service representatives. "[T]he Committee is concerned that any changes relating to attorneys' fees be made carefully so as not to induce unnecessary retention of attorneys by VA claimants and not to disrupt unnecessarily the very effective network of nonattorney resources that has evolved in the absence of significant attorney involvement in VA claims matters." *Id.* at 63.[10]

Furthermore, a similar argument to the district court's was considered and rejected by the Supreme Court in *Walters*. In his *Walters* dissent Justice Stevens made an argument similar to the district court's based on a proposed bill that provided for limited judicial review of BVA decisions and eased the attorney fee limit. *Walters*, 473 U.S. at 365–66, 105 S.Ct. at 3212–13 (Stevens, J., dissenting). In rejecting Justice Stevens' reasoning, the Court emphasized the fact that the proposed bill retained the fee limit for administrative proceedings up to the initial BVA decision. *Walters*, 473 U.S. at 322 & n. 10, 105 S.Ct. at 3190 n. 10.

We find that the passage of the JRA did not undermine the government's interest in the fee limit. The retention of the fee limit through the initial BVA decision and the legislative history of the JRA indicate that Congress continues to believe that the government has a strong interest in minimizing attorney participation in benefits proceedings before the VA.

The district court also concluded that enabling claimants to retain counsel would not increase the cost of administration of IR claims. This contradicts the Supreme Court's finding in *Walters* that the introduction of lawyers into administrative proceedings is likely to have serious adverse consequences:

> A necessary concomitant of Congress' desire that a veteran not need a representative to assist him in making his claim was that the system should be as informal and nonadversarial as possible.... The regular introduction of lawyers into the proceedings would be quite unlikely to further this goal....
>
> . . . .
>
> ... It is scarcely open to doubt that if claimants were permitted to retain compensated attorneys the day might come when it could be said that an attorney might indeed be necessary to present a claim properly in a system rendered more adversary and more complex by the very

---

**10.** Plaintiffs assert that when the fee limitation initially was enacted it was intended to prevent unscrupulous attorneys from charging unjustified fees for completing simple forms. The Senate Report for the JRA does explicitly state that concern over unscrupulous attorneys is no longer warranted. *Id.* at 64. Plaintiffs argue that the government should not be allowed to assert a different purpose for the fee limitation than the original purpose. We find this argument without merit. Although when initially enacted the fee limit may have been motivated by a desire to protect claimants from unscrupulous attorneys, the Senate Committee Report for the JRA indicates that Congress now endorses other purposes for maintaining a fee limit through the initial BVA decision and we see no reason why the government is precluded from asserting these other purposes.

presence of lawyer representation.... And this additional complexity will undoubtedly engender greater administrative costs, with the end result being that less Government money reaches its intended beneficiaries.

*Id.* at 323–24, 326, 105 S.Ct. at 3190–91, 3192; *see also Wolff v. McDonnell,* 418 U.S. 539, 570, 94 S.Ct. 2963, 2981, 41 L.Ed.2d 935 (1974) (use of counsel in prison disciplinary proceedings would "inevitably give the proceedings a more adversary cast"); *Gagnon v. Scarpelli,* 411 U.S. 778, 787, 93 S.Ct. 1756, 1762, 36 L.Ed.2d 656 (1973) ("introduction of counsel into a revocation proceeding will alter significantly the nature of the proceeding").

The district court's dismissal of the potentially detrimental effects of increasing the number of lawyers appearing before the VA severely discounts the Supreme Court's finding in *Walters.* On the basis of the legislative history of the JRA and the Supreme Court's statements in *Walters,* we find the district court's conclusion that the government has no significant interest in retaining the fee limit flawed. The passage of the JRA serves to reaffirm the government's strong interest in retaining the fee limit. The Supreme Court's assessment of the government's interest in the fee limit in *Walters* remains valid.

(2) Private Interest

The district court found that a "substantial majority of IR claimants would rely primarily on SCDD benefits for their basic maintenance and support." *Derwinski,* 782 F.Supp. at 1396. This factual finding supported the district court's conclusion that the private interest at stake in IR claims is "great." *Id.* at 1407.

■ The government argues that since IR benefits are not need-based the district court should not have concluded that the private interest in IR claims is strong. This argument is supported by the holding in *Walters,* in which the Supreme Court found the fact that VA benefits are not need-based "determinative of the right to employ counsel." 473 U.S. at 333, 105 S.Ct. at 3195.[11] While the government concedes in its Reply Brief that non-need based benefits can be subject to due process, it takes the position that the district court's findings regarding the poverty of IR claimants and their dependence on VA benefits are irrelevant in assessing whether the process used to determine IR claims comports with the Constitution. While the poverty of the IR claimants is not necessarily irrelevant in assessing their private interest, we agree with the government that non-need based benefits do not create as strong an interest as need-based benefits. *Mathews,* 424 U.S. at 342–43, 96 S.Ct. at 906.

■ The government also argues that the class of IR claimants in this case consists of *applicants* for benefits rather than recipients, and that this fact weakens their interest in challenging the fee limit. The veterans respond that their plaintiff class contains both applicants *and recipients* and therefore the government's argument must fail. The definition of the certified class does include recipients. *See supra* note 2. However, the government states that because the VA concedes that the JRA would apply to current recipients of benefits, all recipients are removed from the class, leaving only applicants.[12] Ultimately, whether the class now includes any recipients remains unclear. To the extent that the class includes applicants, we do agree with the government's contention that applicants have weaker interests in government benefits than recipients. *See Ressler v. Pierce,* 692 F.2d 1212, 1217 (9th Cir.1982) (applicants for HUD rent subsidiar-

---

11. In reaching this conclusion the Supreme Court distinguished VA benefits from welfare benefits. *Id.* (*citing Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)).

12. In its Reply Brief the government states that the VA concedes that the JRA would apply to any attempt to reduce recipients' IR benefits. It is not entirely clear whether this would truly re-

move all recipients from the class. That concession does not appear to exempt recipients falling into the second part of the class definition, those contesting the disability rating or period of retroactive compensation. The VA is not attempting to reduce the benefits of those recipients, rather the recipients are attempting to increase their benefits by challenging VA decisions.

ies are entitled to due process protection in application and selection process).

■ Even though the remaining class might include some recipients, the fact that IR benefits are not need-based compels us to find that the district court erred in characterizing the private interest of IR claimants as "great". Accordingly, we reduce the weight accorded the IR claimants' private interest in evaluating the due process claim.

### (3) Risk of Erroneous Deprivation of Benefits

The final factors under *Mathews* are the "risk of an erroneous deprivation of [the claimant's] interest" and the "probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335, 96 S.Ct. at 903; *see Walters*, 473 U.S. at 321, 105 S.Ct. at 3189. The Supreme Court in *Walters* explained that due process law accords legislatures considerable flexibility in devising processes for dispute resolution. *Id.* at 326, 105 S.Ct. at 3192. Therefore, the Court held, "[i]t would take an extraordinarily strong showing of probability of error under the present system—and the probability that the presence of attorneys would sharply diminish that possibility—to warrant a holding that the fee limitation denies claimants due process of law." *Id.*

On the bases of a number of factual findings, the district court concluded that the VA's system for handling IR claims created a substantial risk that claimants erroneously will be deprived of benefits. *Derwinski*, 782 F.Supp. at 1396–1402. It also found that the VA's procedural safeguards are inadequate to decrease the risk of error and that lawyers are necessary to minimize the errors. *Id.* at 1402–07. Considering all the evidence, the district court concluded that plaintiffs "made an extraordinarily strong showing of the probability of erroneous denial of ionizing radiation claims under the existing system, and an equally strong showing that assistance of counsel will sharply reduce that possibility." *Id.* at 1409.

The government argues that the district court made several errors in reaching these conclusions. First, the government argues that the district court improperly substituted its judgment for the informed decisions of Congress. *See Mathews*, 424 U.S. at 349, 96 S.Ct. at 909 ("substantial weight must be given to the good-faith judgments of the individuals charged by Congress with the administration of social welfare programs that the procedures they have provided assure fair consideration of the entitlement claims of individuals"); *Walters*, 473 U.S. at 334, 105 S.Ct. at 3196. The government argues that the district court's holding requires the VA to adopt an adversarial mode of decision-making rather than the informal system now in place. We find that, with regard to certain of the district court's factual findings discussed more fully below, insufficient deference was given to Congressional findings.

■ Additionally, the government argues that the district court erred in assessing the type of evidence necessary to determine that the IR claims process fails to meet due process requirements. The government asserts that the district court wrongly focused on whether the VA process is too complex and that the district court should have looked at two other factors. First, the government urges that the proper inquiry is whether lawyers are necessary to make the process fair, not whether lawyers are better able to pursue claims than non-lawyers. *See Walters*, 473 U.S. at 331, 105 S.Ct. at 3194. Second, the court should have focused on whether the IR claims process has produced or is substantially likely to produce a significant number of wrongful denials of claims as opposed to focusing on the complexity of the process. *Id.* at 330, 105 S.Ct. at 3194 ("a process which is sufficient for the large majority of a group of claims is by constitutional definition sufficient for all of them"). The government correctly articulated the standards set forth in *Walters*. We find that the district court failed to adhere to those standards.[13]

13. The government also contends that the district court erred by failing to consider the VA's evidence that its informal process of handling IR claims comports with due process. This argument lacks merit. The fact that the district court did not discuss portions of the evidence present-

### (a) Findings Regarding the Complexity of IR Claims

The district court found that several levels of complexity in the VA system for handling IR claims made it suspect under the Due Process Clause. The court divided its analysis into three parts: (1) the complexity in the governing law and procedure; (2) the complexity of the medical and scientific issues raised by IR claims; and, (3) the development of complex factual issues supporting IR claims.

The district court found that the complexity of the governing law and procedure makes it difficult for a layperson to file and process an IR claim. The government argues that claimants do not need to be able to use these materials to file a claim because the VA does the work for them; the system is designed so that veterans can file and process claims without the help of an attorney.

Our review of the legislative history of the JRA confirms that the system comports with the government's view of the VA claims process:

> [T]he existing limit on attorneys' fees is generally appropriate with respect to the initial claims stage in the sense that applying for VA benefits is a relatively uncomplicated procedure, with the VA generally securing the relevant military records as well as evaluating the merits of the claim.... there would seem to be no need for the assistance of an attorney in order to initiate the claims process by completing and filing an application.

S.Rep. No. 418, 100th Cong., 2d Sess. at 63 (1988); *see also* H.Rep. No. 963, 100th Cong., 2d Sess. at 13–14, *reprinted in,* 1988 U.S.C.C.A.N. 5782, 5795. Congress is a body particularly well suited to engage in factual analysis of issues involving large quantities of information and its determination regarding

the manner in which the VA benefits system operates is entitled to great deference. *Walters,* 473 U.S. at 331 n. 12, 105 S.Ct. at 3194 n. 12.

Notably, the district court did not conclude that significant numbers of IR claimants have been denied benefits because they were unable to follow the procedures necessary to pursue their claims. Rather, its finding that the governing law and procedure involved in the IR claims process is complex is based solely on a description of the process for assessing those claims in the abstract. In *Walters* the Supreme Court specifically rejected the district court's finding at the preliminary injunction stage that the SCDD benefits process was complex because that finding was based on a discussion of that process in the abstract. *Walters,* 473 U.S. at 329, 105 S.Ct. at 3193. The Supreme Court's reasoning in *Walters* indicates that the district court's finding regarding the complexity of the law and procedures of IR claims is not sufficient to establish a due process violation.

The district court also found that IR claims present much more complex medical and scientific issues than other SCDD claims. *Derwinski,* 782 F.Supp. at 1398–1402. Based on these findings the district court determined that to properly present an IR claim expert medical opinion and testimony as well as scientific evidence must be marshalled. *Id.* at 1402.

The government asserts that, although the district court found that IR claims are complex, it did not find that a significant number of IR claimants wrongfully were denied benefits due to the medical and scientific complexities of IR claims. The government suggests that such a finding is necessary to determine that the VA system is not working because without this evidence IR cases are not materially different from all SCDD claims controlled by *Walters.*[14]

---

ed neither indicates that the district court ignored that evidence, nor provides a basis for disregarding the district court's factual findings. *Truck Terminals, Inc. v. Commissioner,* 314 F.2d 449, 454–55 (9th Cir.1963). The district court was presented with a large amount of conflicting evidence and we will not reverse its resolution of those conflicts unless it is clearly erroneous. *Mayview Corp. v. Rodstein,* 620 F.2d 1347, 1353 (9th Cir.1980).

**14.** In response to the district court's findings on the complexity of determining disease causation and of accurately assessing radiation dose estimates the government further contends that the district court failed to give adequate deference to Congress' determination that these issues should not be resolved on a case-by-case basis.

The government's argument is unpersuasive. The Veterans' Dioxin and Radiation Exposure

We agree with the government's analysis. The district court's factual findings indicate that IR claims present considerable medical and scientific complexities; such complexities present the risk of errors in the assessment of IR claims and that risk may be reduced by marshalling medical and scientific evidence. However, on the basis of the district court opinion we cannot assess how frequently such errors actually occur in the present VA system. *Walters*, 473 U.S. at 327, 105 S.Ct. at 3192 (discussing the inability to determine based on the record the quantity of erroneous deprivations of VA benefits).

The district court's findings regarding the complexity of factual development in IR cases present the same problem as the district court's other findings regarding the complexity of IR claims.[15] It ultimately is unclear from its opinion how frequently IR claims wrongly are denied due to inadequate factual development.

■ We find that the district court's abstract discussion of the complexities involved in IR claims does not provide a sufficient basis for determining that the probability of error under the present system for adjudicating IR claims is truly "extraordinarily strong."

### (b) Findings Regarding Procedural Safeguards

■ The district court also found that procedural safeguards within the VA system, designed to protect the rights of SCDD and

IR claimants, do not achieve that goal. *Derwinski*, 782 F.Supp. at 1403–05. It concluded that the VA system actually functions in an adversarial manner and that service representatives are overworked and unable to adequately represent IR claimants. *Id.* at 1403–06.[16] Once again, the district court ignored Congressional findings establishing the opposite contention. Recent Congressional reports state that the VA benefits system does function in a nonadversarial manner and that the service representatives effectively represent VA claimants.

The House Report prepared in conjunction with the JRA notes that "[o]ne of the most valuable features of the present VA system is the participation of unpaid veteran service organization representatives in every aspect of the VA benefits system." H.Rep. No. 963, *reprinted in* 1988 U.S.C.C.A.N. 5782, 5807; *see also* S.Rep. No. 418, 100th Cong., 2d Sess. at 64 (1988) ("[T]here is a strong and vital system of veterans service officers who provide excellent representation at no cost to claimants."); *Walters*, 473 U.S. at 322, 105 S.Ct. at 3190. In addition, the House Report indicates that the VA system functions in a non-adversarial manner. H.Rep. No. 963, *reprinted in* 1988 U.S.C.C.A.N. 5782, 5811 ("the VA is expressly encourage[d] to preserve its informal, non-adversarial procedures").

These Congressional findings are deserving of our great deference. "When Congress makes findings on essentially factual issues

---

Compensation Standards Act of 1984, Pub.L. No. 98–542, 98 Stat. 2725 (1984), conferred considerable discretion on the VA in establishing the proper guidelines for assessing IR claims. The VA regulations adopted pursuant to Pub.L. No. 98–542 provide for individualized assessments of IR claims. *See* 38 C.F.R. § 3.311b(c)–(e). The government's contention that the current benefits system eliminates case-by-case determinations of causation is incorrect.

Similarly, the current benefits system already allows for individualized consideration of radiation dose estimates. Both Pub.L. No. 98–542 and the regulation adopted pursuant to that law, 38 C.F.R. § 3.311b, allow IR claimants to submit their own radiation dose estimates. Pub.L. No. 98–542, § 7(b), 98 Stat. at 2731; 38 C.F.R. § 3.311b(a)(3).

15. The district court found that properly developing the underlying facts in IR claims is a very

intricate process and that much of the relevant information is difficult to obtain. *Derwinski*, 782 F.Supp. at 1402.

16. The district court also found that the VA has erroneously applied 38 C.F.R. § 3.309 dealing with presumptive service connection, resulting in wrongful denial of claims. *Id.* at 1403. Unfortunately, the district court did not quantify the frequency of such errors, making it difficult to assess how much weight such errors should be given in the due process analysis. *See Walters*, 473 U.S. at 320, 105 S.Ct. at 3189 ("the [Due Process] Clause does not require that 'the procedures used to guard against an erroneous deprivation … be so comprehensive as to preclude any possibility of error.'" (quoting *Mackey v. Montrym*, 443 U.S. 1, 13, 99 S.Ct. 2612, 2618, 61 L.Ed.2d 321 (1979)).

such as these, those findings are of course entitled to a great deal of deference, inasmuch as Congress is an institution better equipped to amass and evaluate the vast amounts of data bearing on such an issue." *Walters*, 473 U.S. at 331 n. 12, 105 S.Ct. at 3194 n. 12; *see also Rostker v. Goldberg*, 453 U.S. 57, 72–73, 101 S.Ct. 2646, 2656, 69 L.Ed.2d 478 (1981). The district court was not free to ignore these Congressional findings on the adequacy of VA procedures when evaluating the due process claim.

### (4) Probable Value of Attorneys in Reducing The Risk of Error

 The Supreme Court in *Walters* stated that "it is less than crystal clear why *lawyers* must be available to identify possible errors in *medical* judgment." *Walters*, 473 U.S. at 330, 105 S.Ct. at 3194.[17] The district court found that IR claims present many tasks for which attorneys particularly are well suited. Attorneys could secure government documents with relevant information, help claimants avoid procedural errors, enhance the effective use of medical and scientific experts, conduct detailed factual development, and prepare briefs. *Derwinski*, 782 F.Supp. at 1406. The government concedes that attorneys could assist with a number of tasks but asserts that this does not indicate that lawyers are *necessary* to ensure procedural fairness in the adjudication of IR claims. *See Walters*, 473 U.S. at 331, 105 S.Ct. at 3194.

In support of its finding, the district court stated that "evidence demonstrates that IR claimants who employ attorneys have had significantly higher success rates than those relying on service representatives." *Derwinski*, 782 F.Supp. at 1407. The evidence referenced in that quote showed that in IR claims handled by lawyers the claims were granted in 5 out of 31 cases (16%) while in IR claims not handled by lawyers the claims were granted in 35 out of 5,456 cases (.6%).

This is a greater disparity than the 2% difference between general SCDD claims ad-

judicated with and without attorneys which the Supreme Court found inadequate to show a due process violation in *Walters*. However, the difficulty with according great weight to the results reached in 5 cases is the absence of evidence on the relative strength of the claims in those cases as compared to other IR claims.

Given our findings as to the governmental and private interests at stake in this case, and given that the issue is whether the presence of attorneys would "sharply diminish" the probability of error in the adjudication of IR claims, we conclude that the evidence presented does not satisfy the extraordinarily strong showing standard set forth in *Walters*, and we find no due process violation.

### B. First Amendment Claim

 The district court also held that the fee limitation violates the IR claimants' First Amendment right to free speech and to petition the government. *Derwinski*, 782 F.Supp. at 1412. The claim that the fee limit raises First Amendment issues is based on a series of Supreme Court opinions holding that collective activity taken to achieve meaningful access to the courts is protected by the First Amendment. *See United Mine Workers of Am. v. Illinois State Bar Ass'n*, 389 U.S. 217, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967); *Brotherhood of R.R. Trainmen v. Virginia State Bar*, 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89 (1964); *NAACP v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); *United Transportation Union v. State Bar of Michigan*, 401 U.S. 576, 91 S.Ct. 1076, 28 L.Ed.2d 339 (1971).

In *Walters* the Supreme Court noted that there were "numerous conceptual difficulties" with extending those cases to the situation involving VA claimants. *Walters*, 473 U.S. at 334, 105 S.Ct. at 3196. Since the above cases all involved organizations helping their members secure legal representation, the Court found "the First Amendment interest at stake [in those cases] was primarily the right to associate collectively for the common

---

**17.** *See also Washington v. Harper*, 494 U.S. 210, 236, 110 S.Ct. 1028, 1044, 108 L.Ed.2d 178 (1990) (quoting *Walters*, 473 U.S. at 330, 105 S.Ct. at 3194) (holding that due process does not require the presence of counsel in civil proceedings to authorize medical treatment of mentally ill prisoners).

good." *Id.* at 335, 105 S.Ct. at 3196. In contrast, the Court found the First Amendment interest in this case to be an individual interest in best pursuing a claim. *Id.*

Despite the fact that those First Amendment cases dealt with collective activity, both the district court and plaintiffs assert that they are applicable to the situation involving IR claimants and cite a number of decisions that have interpreted those Supreme Court cases as applying to individuals as well as to organizations. *See, e.g., Rizzo v. Dawson,* 778 F.2d 527, 531 (9th Cir.1985) (plaintiff's claim that prison transfer was retaliation for his work assisting other prisoners as a "jailhouse lawyer" and for pursuing his own legal action was sufficient to state a First Amendment claim); *Hadix v. Johnson,* 694 F.Supp. 259 (E.D.Mich.1988) (prison's library and the legal assistance available to prisoners were inadequate to provide prisoners meaningful access to courts), *aff'd without opinion,* 871 F.2d 1087 (6th Cir.1989); *Jackson v. Procunier,* 789 F.2d 307 (5th Cir.1986) (prison mailroom delays in delivering prisoner's legal papers may have interfered with his right of access to the courts).

It is unclear that such cases, which are factually distinct, would apply to a situation involving IR claimants who assert "a First Amendment right to pay their surrogate speaker" before an administrative agency. *Walters,* 473 U.S. at 335, 105 S.Ct. at 3196. The Supreme Court in *Walters* found the notion that VA claimants have a First Amendment right to pay a surrogate speaker a "questionable proposition." *Id.*

██ Although the First Amendment extends to the right to petition an administrative agency,[18] what constitutes "meaningful access" to an agency may not be the same as what constitutes "meaningful access" to a court. A number of opinions express the view that legal aid often is necessary to achieve meaningful access to the courts. *See, e.g., Martin v. Lauer,* 686 F.2d 24, 32 (D.C.Cir.1982); *Potashnick v. Port City Constr. Co.,* 609 F.2d 1101, 1108 (5th Cir.), *cert. denied,* 449 U.S. 820, 101 S.Ct. 78, 66

L.Ed.2d 22 (1980). Whether the aid of an attorney is necessary for IR claimants to achieve "meaningful access" to the VA benefits process is the main point of contention in this case. Since the heart of the First Amendment inquiry is whether the IR claimants currently have "meaningful access" to the VA benefits process, we conclude that the focus of the First Amendment analysis is essentially the same as that under the Due Process Clause. *Walters,* 473 U.S. at 335, 105 S.Ct. at 3196 ("appellees' First Amendment arguments, at base, are really inseparable from their due process claims").

We have already determined in our due process analysis that attorneys are not necessary to afford IR claimants meaningful access to the VA benefits process. We likewise determine that the fee limit does not violate appellees' First Amendment rights.

**REVERSED.**

---

**18.** *See California Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 510, 92 S.Ct. 609, 611, 30 L.Ed.2d 642 (1972).