45 F.3d 436
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Gina POLLACK, Plaintiff-Appellant,
v.
PRINCESS CRUISES, INC.; Peninsular and Oriental Steam
Navigation Company, a foreign corporation,
Defendants-Appellees.
 Nos. 93-55734, 94-55439.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 4, 1994.
Decided Dec. 19, 1994.
 
 1
 Before: WIGGINS, KOZINSKI, and THOMPSON, Circuit Judges
 
 
 2
 MEMORANDUM*
 
 OVERVIEW
 
 3
 Gina Pollack alleged that she was discriminated against by her employer, Princess Cruises, Inc., based on her gender. She brought several common law causes of action and also brought claims under Title VII and California's Fair Employment and Housing Act ("FEHA"), based on Princess' failure to upgrade her title to "vice president," discriminatory pay, and retaliatory actions.
 
 
 4
 The district court granted summary judgment for Princess on Pollack's common law claims and dismissed all claims against Princess' parent company, Peninsular and Oriental Steam Navigation Company ("P & O"), for lack of personal jurisdiction. The district court held a bench trial on the Title VII claims and entered judgment for Princess. The court also entered judgment for Princess on the FEHA claims without trial. Pollack appeals those rulings and a ruling denying her motion for disqualification of the trial judge. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291, and we affirm.
 
 FACTS
 
 5
 Pollack was hired by Princess in 1984 as Director of Personnel at a salary of $36,000. Princess executives told Pollack they expected that her title would be changed to "vice president" in "the near future," but there was no agreement or contract to that effect. During the course of her employment, Pollack received several bonuses and significant pay raises. Despite her repeated requests, however, her title was never changed to "vice president" and her salary did not reach the level she desired.
 
 
 6
 In 1988, Princess merged with Sitmar Cruises. Pollack was chosen over her Sitmar counterpart, Larry Levinsohn, as head of personnel in the merged company. Levinsohn's pre-merger salary had been higher than Pollack's. Following the merger, Pollack received a higher raise than Levinsohn and an additional bonus, pursuant to management's plan to equalize the pay scales of the two companies.
 
 
 7
 Shortly after the merger, Pollack again sought a raise and change in title. She also allegedly told her superior, Alan Buckelew, that Princess' inequitable pay scale and refusal to upgrade her title "smacked of gender discrimination." Pollack claims that following this discussion, she was excluded from company meetings, shunned by management, and had her check-writing authorization limited. Six months after the first discussion, she again met with Buckelew to discuss the perceived retaliation and refusal to upgrade her title and pay. One month later, in July 1989, Pollack told Buckelew that "Princess's discrimination and retaliatory actions were forcing her out of her job." At Buckelew's request, she submitted her resignation.
 
 
 8
 Just prior to Pollack's resignation, and unbeknownst to her, Princess began trying to find a replacement for her supervisor, Buckelew, who was to be transferred. Princess did not consider Pollack to be a qualified candidate for the position. Following Pollack's resignation, Princess sought a replacement who might be able to fill both Buckelew's and Pollack's former positions. A search firm referred eight male candidates to Princess, and Bruce Matlock ultimately was hired. Matlock had significantly more management experience and training than Pollack and his job duties at Princess were somewhat different from hers. He was paid $75,000. At the time of her resignation, Pollack's salary was $60,000.
 
 DISCUSSION
 I. JURY TRIAL FOR TITLE VII CLAIMS
 
 9
 Pollack argues that she should have been allowed to try her Title VII claim to a jury, pursuant to section 102(c) of the Civil Rights Act of 1991, even though her claims were filed prior to enactment of the Act. Recent Supreme Court and Ninth Circuit cases foreclose that argument, however, by holding that section 102 may not be applied to cases pending at the time of enactment. Landgraf v. USI Film Prods., 114 S.Ct. 1483, 1508 (1994); Chenault v. United States Postal Serv., 37 F.3d 535, 538 (9th Cir.1994). The district court did not err in denying Pollack's request for a jury trial.
 
 
 10
 II. EXCLUSION OF STATISTICAL EVIDENCE AND EXPERT TESTIMONY
 
 
 11
 Pollack argues that two evidentiary rulings by the district court during the bench trial were erroneous. We review the district court's evidentiary rulings for an abuse of discretion, E.E.O.C. v. Farmer Bros. Co., 31 F.3d 891, 897 (9th Cir.1994), and we conclude there was no error.
 
 
 12
 First, Pollack challenges the court's exclusion of Dr. Kleingarten's proffered testimony about the nature and value of her job. The district court clearly did not abuse its discretion in excluding Kleingarten's testimony as "not helpful to the finder of fact." Kleingarten's conclusion about the "proper" title for Pollack would have been speculative and it would have added nothing to Pollack's and other witnesses' testimony about the actual nature and scope of various positions at Princess.
 
 
 13
 Second, Pollack challenges the court's "ruling" that the statistical analysis of her expert, Dr. Kirkpatrick, was irrelevant and would be inadmissible in a jury trial. Kirkpatrick presented statistics comparing the number and salaries of men and women vice presidents and directors each year from 1984 to 1990. The district court did not exclude the evidence. Indeed, it is clear from the court's opinion that it did consider the statistics but found them unpersuasive evidence of discrimination by Princess. That conclusion is not an abuse of discretion on the facts of this case. Cf. Penk v. Oregon State Bd. of Higher Educ., 816 F.2d 458, 463 (9th Cir.), cert. denied, 484 U.S. 853 (1987).
 
 III. JUDGMENT ON TITLE VII CLAIMS
 
 14
 Pollack appeals the district court's entry of final judgment on her Title VII claims of gender discrimination.[1] This court reviews the district court's findings of fact under the "clearly erroneous" standard and reviews legal conclusions de novo. Lam v. University of Hawaii, No. 91-16587, slip op. 12459, 12483 (9th Cir. Oct. 11, 1994).
 
 A. "Failure to Promote" Claim
 
 15
 First, Pollack argues that the district court applied an incorrect legal standard to her "failure to promote" claim. Second, she argues that the evidence does not support certain of the court's factual findings. Neither argument has merit.
 
 
 16
 The district court recognized that the legal standard for establishing a prima facie case of intentional gender discrimination is flexible, see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 & n. 13 (1973), and the court attempted to tailor the McDonnell Douglas test to Pollack's unique claim of discriminatory failure to change her job title. The test applied by the trial court is an accurate reflection of the law. Under its tailored McDonnell Douglas standard, the court permissibly concluded that Pollack had not offered sufficient evidence to create an inference of a discriminatory employment decision.
 
 
 17
 Pollack argues that Princess' hiring of Matlock at the level of "vice president" and with higher pay shows discrimination against her, and she disputes the factual findings the district court made in rejecting this claim. The court did not commit clear error in finding that (1) Matlock's job was not sufficiently similar to Pollack's, and (2) Pollack was not qualified or available to hold the vice president position Matlock received. Pollack concedes that Princess was not simply trying to fill Pollack's position, but needed someone to replace Buckelew as well. The relative qualifications of Matlock and Pollack and a comparison of their job descriptions supports the court's conclusion that there was not a substantial similarity between the jobs and that Pollack was not qualified for either her supervisor's job or a completely new position that did not exist at the time of her departure. Contrary to Pollack's assertion, Princess did not simply give Matlock the "vice president" title they allegedly denied Pollack because she is female. Princess gave Matlock a completely different position than that held by Pollack, and one for which she has not shown herself qualified.
 
 B. Discriminatory Pay Claim
 
 18
 Pollack argues that the judgment as to her discriminatory pay claim must be reversed because the trial court made two "clearly erroneous" factual findings: First, the court erred in concluding that jobs to which Pollack compared her job (Matlock's and Levinsohn's) were not "substantially similar"; and second, the court committed error by speculating that Matlock's higher salary "might have been" necessary to induce him to take the job.
 
 
 19
 Neither argument has merit. First, there is abundant evidence in the record that Matlock's job entailed a combination of Pollack's and her supervisor's former duties. As to Levinsohn, the district court actually concluded that "[e]ven if [Pollack] made such a showing [of substantial similarity]," his higher pay was explained by nondiscriminatory reasons and therefore raised no inference of discrimination. That conclusion is also well supported in the record.
 
 
 20
 Second, the court's "speculation" about why Matlock's salary might have been higher than Pollack's provides no basis for upsetting the court's judgment. The court had already found that Matlock's job was not substantially similar to Pollack's. That finding negates any inference of discrimination that could otherwise be drawn from the difference in pay.
 
 C. "Pretext" Evidence
 
 21
 Pollack also challenges the court's statement that there was "little or no evidence of pretext." The lower court's opinion reflects extensive consideration of Pollack's evidence, including evidence she characterizes as "pretext" evidence. However the evidence is characterized, the court permissibly concluded that the sum of the evidence did not amount to a showing of intentional gender discrimination under Title VII.
 
 IV. JUDGMENT ON FEHA CLAIMS
 
 22
 After considering the evidence presented during the Title VII bench trial, the trial court entered judgment for Princess on Pollack's FEHA claims without a trial "because the facts most favorable to the plaintiff, even without the findings of fact in which the court as a trier of fact resolves disputed evidence, compel the legal conclusion that defendants are not liable on the state [FEHA] claims." The court's action in effect granted summary judgment to Princess on the FEHA claims. We review a grant of summary judgment de novo, Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994), and we agree with the district court that summary judgment was proper in this case.
 
 
 23
 First, the trial court did not err by entering summary judgment sua sponte. Cf. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986) (court may enter summary judgment sua sponte as long as losing party was on notice she had to come forward with all her evidence). In this case, Pollack asserts the same three claims under FEHA as she did under Title VII--failure to "promote," discrimination in pay, and retaliation--and the elements of proof are the same under both statutes. See 42 U.S.C. Secs. 2000e et seq.; Cal.Gov't Code Secs. 12900 et seq.; University of S. Cal. v. Superior Court, 272 Cal.Rptr. 264, 268 (Cal.Ct.App.1990) (California courts look to Title VII case law to resolve FEHA claims). Pollack does not argue she would have any additional evidence for a FEHA trial.[2]
 
 
 24
 Second, summary judgment for Princess is appropriate in this case because Pollack failed to present sufficient evidence to allow a reasonable jury to return a verdict for her. See Fed.R.Civ.P. 56(e); Anderson v. Liberty Lobby, 477 U.S. 242, 256-57 (1986); Wallis v. J.R. Simplot Co., 26 F.3d 885, 889-91 (9th Cir.1994) (summary judgment appropriate even if plaintiff makes a prima facie case, where there was no evidence to refute defendant's legitimate explanation).
 
 
 25
 As discussed in Section III, supra, we conclude that Pollack did not raise an inference of intentional discrimination on her "failure to promote" claim or her discriminatory pay claim. We also conclude that Pollack's retaliation claim fails because she did not demonstrate any "adverse employment action" by Princess. See Wallis, 26 F.3d at 891. Pollack claims she was retaliated against for complaining to Buckelew in December 1988 of gender discrimination. Her "evidence" of adverse actions consists of nothing more than her own belief that she had been excluded from "certain functions and meetings" and her perception that she was treated "coldly" by certain of her superiors.[3] Her "evidence" is insufficient to survive Princess' motion for summary judgment.
 
 
 26
 V. MOTIONS FOR DISQUALIFICATION AND NEW TRIAL
 
 
 27
 At the close of Pollack's case, Princess also rested and stated its intention to bring a Rule 52 motion on the Title VII claims. Princess filed the Rule 52 motion and also moved for summary judgment on Pollack's FEHA claims. Judge Letts' law clerk informed the parties that both motions would be taken off calendar and Judge Letts would issue his own findings of fact and conclusions of law. The judge gave both parties an opportunity to comment on his tentative findings and conclusions, but neither party did so. Following issuance of the final Findings of Fact and Conclusions of Law, Pollack moved to disqualify Judge Letts pursuant to 28 U.S.C. Sec. 455 and moved for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure. Judge Keller denied both motions.
 
 
 28
 Pollack alleges that the trial judge's Findings of Fact and Conclusions of Law impermissibly relied on Princess' ex parte motions, violating both 28 U.S.C. Sec. 455(a) (by creating an appearance of impropriety) and the Due Process Clause (by denying Pollack notice and an opportunity to be heard). Judge Letts admitted that he relied on the post-trial motions to the extent of "checking the accuracy of certain facts ... and [checking] citation of undisputed legal authority." Pollack argues that this conduct requires reversal of the judgment and a new trial before a different judge. We conclude that reversal is not warranted.
 
 A. Denial of Due Process Argument
 
 29
 Pollack's denial of due process claim is reviewed de novo. National Ass'n of Radiation Survivors v. Derwinski, 994 F.2d 583, 587 (9th Cir.), cert. denied, 114 S.Ct. 634 (1993). "Whether [a party] received due process depends on whether [she] had an opportunity to participate in determination of the relevant issues and on whether the ex parte [documents] unfairly prejudiced [her]." Guenther v. C.I.R., 889 F.2d 882, 884 (9th Cir.1989). We conclude that Pollack had notice and an opportunity to be heard and that her due process rights therefore were not violated.
 
 
 30
 Pollack had notice of Princess' Rule 52 motion based on counsel's oral statement at the close of trial. Judge Letts offered both parties an opportunity to comment on his tentative findings and conclusions and made clear that any comments would not prejudice the parties' ability to appeal his final Findings of Fact and Conclusions of Law. Judge Letts also subsequently explained that although he did use both Princess' pretrial and post-trial memoranda to check his facts and citations, (1) he had reached his own conclusions at the close of the trial; (2) he declined to rule from the bench only out of deference to the feelings of the parties; and (3) he had written a draft of his decision in his own hand before either post-trial motion was filed.
 
 B. Violation of 28 U.S.C. Sec. 455
 
 31
 The denial of Pollack's motion for recusal under section 455 is reviewed for an abuse of discretion. Preston v. United States, 923 F.2d 731, 733 (9th Cir.1991). If " 'a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned,' " section 455(a) requires recusal. Id. at 734 (quotation omitted). However, even if the judge committed error by failing to recuse himself, the "draconian remedy" of reversal and retrial may not be warranted if the error was harmless. Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 862 (1988); United States v. Van Griffin, 874 F.2d 634, 637 (9th Cir.1989).
 
 
 32
 Even if Judge Letts' review and limited use of the ex parte motions could create an appearance of impropriety in violation of section 455(a), reversal is not required because any error is harmless. There was no actual bias in this case, the post-trial documents did not contain new or previously unknown evidence that would influence the judge, and the judge would have reached the same result if the documents had never been submitted. See Van Griffin, 874 F.2d at 637-38.
 
 VI. CONSTRUCTIVE WRONGFUL TERMINATION CLAIM
 
 33
 Pollack appeals the trial court's entry of summary judgment for Princess on her common law claim of constructive wrongful termination. The only allegations Pollack makes in support of that claim are the "continuous discriminatory denial" of a vice president title and commensurate pay; her exclusion from certain post-merger meetings; denial of information necessary to do her job (in the form of failure to return her telephone calls); and "cold" treatment by certain superiors.
 
 
 34
 In the overall context of Pollack's working conditions, the trial judge correctly concluded that these facts would not lead "a reasonable person in [her] position" to feel that she was "forced to quit because of intolerable and discriminatory working conditions." Steiner v. Showboat Operating Co., 25 F.3d 1459, 1465 (9th Cir.1994).
 
 
 35
 Pollack claims that summary judgment was granted only as to the common law claim of constructive discharge, but that the court "applied that ruling at trial to prevent [Pollack] from proving constructive discharge under Title VII and, presumably, under the FEHA." We find no merit to that contention. The Findings of Fact and Conclusions of Law indicate that the trial judge considered but ultimately rejected the constructive wrongful termination claims under Title VII and the FEHA. Moreover, Pollack cites neither a trial ruling preventing her from proving her claim nor her timely objection to any such ruling, and we have found none.
 
 
 36
 VII. DISMISSAL OF P & O FOR LACK OF PERSONAL JURISDICTION
 
 
 37
 Finally, Pollack argues that the trial court erred by dismissing P & O from the case for lack of in personam jurisdiction. We need not address the propriety of P & O's dismissal in light of our conclusion that Pollack cannot prevail on any of her substantive claims.[4]
 
 CONCLUSION
 
 38
 For the foregoing reasons, the district court's judgment for Princess on Pollack's Title VII claims, state FEHA claims, and constructive wrongful termination claim is AFFIRMED. The ruling denying Pollack's motion to disqualify Judge Letts is also AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Pollack apparently does not challenge the court's judgment for Princess on her Title VII retaliation claim. Her briefs on appeal merely argue that the issue should go to a jury. As discussed in Section I, supra, however, she is not entitled to a jury trial on any of her Title VII claims
 
 
 [2]
 Pollack does challenge the court's exclusion of Kleingarten's testimony and the court's statement that Kirkpatrick's statistical evidence "would not be allowed to be submitted to a jury in a jury trial." Neither argument renders summary judgment inappropriate. As discussed in Section II, supra, the court permissibly excluded Kleingarten's testimony. The court's "anticipatory exclusion" of Kirkpatrick's statistics is also permissible because the statistics do not demonstrate such a stark disparity that they raise an inference of intentional discrimination by Princess
 
 
 [3]
 Pollack apparently has abandoned her arguments that Princess' failure to give her an interim pay raise in mid-1989, and the limit placed on Pollack's check writing ability constitute "adverse employment actions." The district court persuasively explained why these actions were not "adverse" and why they raised no inference of discrimination
 
 
 [4]
 Pollack asserts no independent claims against P & O