852 P.2d 690

**C.C. RAMIREZ, Joanne Herrera, Patty Diekman, Shirley Bishop, Suzanne Preith, Dorothy Senter, Jerrilou Hammett, Kingsley Hammett, Gary Epler and Joe L. Martinez, Plaintiffs–Appellants,**

**v.**

**CITY OF SANTA FE, a New Mexico municipal corporation, the City Council of the City of Santa Fe, in their official capacities as City Councilors for the City of Santa Fe, Peso Chavez, John Egan, Phil Griego, Bernie Beenhouwer,**

**Peter Goodwin, David Schutz, the Urban Policy Committee, in their official capacities as members of the Committee, Nancy Long, Ouida McGregor, Ernesto B. Baca, Mercedes Romero, Janet Stoker, Karen Walker and Dolores Lee–Burciaga, Defendants–Appellees,**

**and**

**Camino Carlos Rey Partnership, Intervenors–Appellees.**

No. 13312.

Court of Appeals of New Mexico.

April 7, 1993.

Ann Yalman, Santa Fe, for plaintiffs-appellants.

James C. McKay, City Atty., Santa Fe, for defendants-appellees.

Frank R. Coppler, Coppler & Aragon, P.C., Santa Fe, for intervenors-appellees.

## OPINION

FLORES, Judge.

Plaintiffs appeal the district court's order of dismissal due to two jurisdictional defects: (1) lack of standing to challenge a City Council amendment to the General Plan which changed the classification of a thirty-acre tract of land from residential to industrial and commercial; and, (2) untimely filing of the petition for writ of certiorari in district court. Plaintiffs are landowners who own residential property near the Camino Carlos Rey Industrial Park, the thirty-acre parcel of land designated in the contested amendment (hereinafter "the Amendment") to the General Plan. Defendants in this case include the City of Santa Fe, City Council members, members of the Urban Policy Committee (hereinafter "the UPC"), and intervenors Camino Carlos Rey Partnership (hereinafter "the Developer"). The UPC is a committee of the Santa Fe City Council, and is responsible for making long-range policy and advisory recommendations to the City Council on the urban area General Plan and its amendments.

Plaintiffs raise four issues on appeal: (1) whether the district court erred in finding that Plaintiffs did not have standing to challenge the Amendment to the General Plan; (2) whether the district court erred in determining the petition for writ of certiorari was not timely filed pursuant to NMSA 1978, Section 3–21–9 (Repl.Pamp.1985); (3) whether the City Council's decision to grant the Amendment to the General Plan violated Plaintiffs' procedural due process rights; and, (4) whether Plaintiffs are entitled to a trial de novo pursuant to NMSA 1978, Section 3–19–8(C) (Repl.Pamp.1985). The Developer also raises the issue that Plaintiffs were required to request a supersedeas and stay pursuant to SCRA 1986, 12–207 (Repl.Pamp.1992).

We decline to address the issue of whether Plaintiffs' procedural due process rights were violated. There is nothing in the district court's order indicating it considered the many factual issues necessary for a conclusion that the UPC failed to hold a public meeting on the proposed amendment as required by Section 3–8–1.1 of the 1981 Santa Fe City Code (current version at Section 14–9.1(E) of the 1989 Santa Fe City Code) or that the City Council violated Plaintiffs' procedural due process rights by granting the Amendment to the General Plan. We will not resolve those factual issues before the district court has an opportunity to do so. See Miller v. Smith, 59 N.M. 235, 241, 282 P.2d 715, 719 (1955) (The New Mexico Supreme Court held that as an appellate court, it does not consider questions which have not been passed on by the trial court.); In re Estate of Farrington, 91 N.M. 143, 145, 571 P.2d 410, 412 (1977) (The appellate court is restricted to determine questions of law and must leave factual determinations to the trial court.).

We also decline to address the following legal issues for the reason that appellate courts do not issue advisory opinions: (1)

whether judicial review is appropriate under NMSA 1978, Section 3–19–8(A) (Repl.Pamp.1985); (2) what the appropriate standard of review is for that provision; (3) whether the trial de novo pursuant to Section 3–19–8(C) is an unconstitutional violation of the separation of powers doctrine contravening New Mexico Constitution, article III, Section 1; and (4) whether Plaintiffs are required to request a supersedeas and stay pursuant to SCRA 12–207 in pursuing an appeal in this case. *See Sena School Bus Co. v. Board of Educ.*, 101 N.M. 26, 29, 677 P.2d 639, 642 (Ct.App. 1984).

For the reasons that follow, we reverse the district court's order on the jurisdictional issues of standing and timeliness of filing the petition for writ of certiorari and remand to the district court for determinations consistent with this opinion.

## BACKGROUND

### Procedural Facts

The procedural background of this case is extensive. Judge Encinias, in the initial July 19, 1989 district court decision, on a motion to dismiss, dismissed the appeal and petition for writ of certiorari. Judge Encinias held that even assuming the appeal had been timely filed, there was no legal basis for the appeal because the twelve-month rule of Section 14–9.8 of the Santa Fe City Code did not apply to requests to amend the General Plan. Judge Encinias determined that the standing issue was therefore moot. Judge Encinias' decision also treated the motion to dismiss as a motion for summary judgment because Plaintiffs had submitted evidence in the form of affidavits regarding Plaintiffs' alleged harm and injury resulting from the Amendment. Shortly thereafter, a peremptory challenge disqualified Judge Encinias and the case was reassigned to a second judge. The case was assigned to yet a third judge on July 28, 1989. On October 5, 1989, the third judge issued an order dismissing all claims with prejudice and quashed the writ. However, this order had been improperly entered and was set aside on October 10, 1989. On February 5, 1990, the case was reassigned to a fourth judge,

Judge Castellano. Judge Castellano granted the motion to dismiss based on two procedural defects: the statute of limitations for the writ, and lack of standing. Additionally, the motion to dismiss was granted based on violation of the twelve-month rule. Judge Castellano's order, entered on June 11, 1991, explicitly stated that "The prior decision of Judge Encinias is correct." In addition, the order clearly applied an abuse of discretion standard: "On the whole record there is no indication that the City defendants acted arbitrarily, capriciously or contrary to the law and therefor this cause should be dismissed." It is from the June 11, 1991 order that Plaintiffs appeal.

### Statement of the Facts

The relevant activities of the Santa Fe City Council and the UPC as regards the amendment process to the General Plan are briefly as follows. The UPC held public meetings on February 25, 1988, and May 4, 1988. The UPC approved the Camino proposal on May 4, 1988 and requested that the City Council amend the General Plan. At the October 12, 1988 meeting, the City Council denied the request to amend the General Plan. At a January 24, 1989 UPC meeting, the UPC was informed about the following proposed changes to the Amendment: (1) a cul-de-sac instead of a through street to Aqua Fria; and, (2) a zoning change from industrial to commercial for a portion of the subject property. The parties dispute whether this was a public meeting within the meaning of Section 3–8–1.1 of the Santa Fe City Code which requires the UPC to review and act on all proposed amendments to the General Plan at a public meeting. On January 30, 1989, the UPC notified the City Council by letter that it sought a waiver of Section 3–8–1.1. The Developer submitted a revised proposal to amend on February 2, 1989. A week later, the City Council voted to publish notice of a March 8th public hearing on the proposed amendment to the General Plan. The City Council passed the Amendment as Resolution No. 1989–13 at the March 8, 1989 hearing pursuant to NMSA 1978, Section 3–19–10 (Repl.Pamp.1985).

### DISCUSSION

#### Standing

■ Standing for judicial review in New Mexico always requires an allegation of direct injury to the complainant. *De Vargas Savings & Loan Ass'n v. Campbell,* 87 N.M. 469, 472, 535 P.2d 1320, 1323 (1975). The test for standing in New Mexico was clearly set forth in *De Vargas:* "to attain standing in a suit arguing the unlawfulness of governmental action, the complainant must allege that he is injured in fact or is imminently threatened with injury, economically or otherwise." *Id.* at 473, 535 P.2d at 1324; *see also Hotels of Distinction West, Inc. v. City of Albuquerque,* 107 N.M. 257, 260, 755 P.2d 595, 598 (1988); *Hawthorne v. City of Santa Fe,* 88 N.M. 123, 124, 537 P.2d 1385, 1386 (1975). In liberalizing the standing test for New Mexico, the New Mexico Supreme Court in *De Vargas* expressly overruled *Ruidoso State Bank v. Brumlow,* 81 N.M. 379, 467 P.2d 395 (1970). *De Vargas,* 87 N.M. at 473, 535 P.2d at 1324. The legal interest test enunciated in *Ruidoso* defined standing in terms of an aggrieved party who:

> is one having an interest recognized by law in the subject matter which is injuriously affected by the judgment, or one whose property rights or personal interests are directly affected by the operation of the judgment.... The true test is whether appellant's legal rights have been invaded, not merely whether he has suffered any actual pecuniary loss or been deprived of any actual pecuniary benefit. He must be aggrieved in a legal sense.

*Ruidoso,* 81 N.M. at 381, 467 P.2d at 397. In overruling the restrictive *Ruidoso* test, the New Mexico Supreme Court in *De Vargas* relied on the liberal trend in federal standing law and stated its agreement with the principles enunciated in *Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) and *United States v. SCRAP,* 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973). *De Vargas,* 87 N.M. at 472, 535 P.2d at 1323. *Sierra Club* expansively delineated the type of harm which confers standing in federal court. *Sierra Club,* 405 U.S. at 733–41, 92 S.Ct. at 1365–69. In that case, the Court stated that if the Sierra Club had shown that its members used the subject property at Mineral King and Sequoia National Park, the United States Supreme Court would have conferred standing based on an alleged injury to the environment from the contested land development plan. As the Court in *De Vargas* cited with approval, *Sierra Club* does not limit standing to economic harm but also recognizes that " 'aesthetic and environmental well-being, like economic well-being, are important ingredients of the quality of life in our society, and the fact that particular environmental interests are shared by the many rather than the few does not make them less deserving of legal protection through the judicial process.' " *De Vargas,* 87 N.M. at 472, 535 P.2d at 1323 (quoting *Sierra Club,* 405 U.S. at 734, 92 S.Ct. at 1366).

■ The New Mexico Supreme Court also agreed with the slight extent of harm required by the United States Supreme Court in *SCRAP. Id.* Once the appellant alleged injury, the extent of injury required under *SCRAP* is slight: "[a]n identifiable trifle is enough for standing to fight out a question of principle; the trifle is the basis for standing and the principle supplies the motivation." *SCRAP,* 412 U.S. at 689–90, n. 14, 93 S.Ct. at 2416–17, n. 14 (quoting Kenneth C. Davis, *Standing: Taxpayers and Others,* 35 U.Chi.L.Rev. 601, 613 (1968)). In addition, *SCRAP* specified that the "pleadings must be something more than an ingenious exercise in the conceivable." *Id.* at 688, 93 S.Ct. at 2416. In *SCRAP,* the Court held that five law school student protestors had standing to contest the Interstate Commerce Commission's decision not to suspend a surcharge on certain freight rates. The attenuated harm the plaintiffs alleged, which was sufficient to fulfill the federal injury in fact requirement for standing, was simply that the rate increase would cause economic, recreational, and aesthetic harm due to an increase in the use of non-recyclable goods. This in turn would negatively impact upon the environment.

Plaintiffs, residential property owners whose properties are located near the land included in the Amendment, contend they have alleged the requisite injury to confer standing to sue. *See De Vargas*, 87 N.M. at 472–73, 535 P.2d at 1323–24. The range of proximity of Plaintiffs' properties to the subject property includes property immediately west and adjacent to the proposed project, three properties between one and one-half blocks and five blocks away, and properties three-tenths and six-tenths of a mile east of the subject property. The specific allegations regarding injury in fact or imminent threat of injury include: (1) fear of increased noise, traffic, crime, and pollution; (2) detrimental effect on the aesthetics of the area; (3) decline in property values; (4) intensification of traffic hazards at street intersections; (5) an increase in drainage, flooding, and runoff; and, (6) a change in the peaceful nature of the neighborhood.

Respondents and Intervenors assert that Plaintiffs failed to allege a sufficiently demonstrable injury. Furthermore, Respondents contend that mere proximity, speculative fears, and quality of life arguments are inadequate allegations of injury to confer standing. In addition to *De Vargas*, Respondents rely on the more restrictive language of *St. Sauver v. New Mexico Peterbilt, Inc.*, 101 N.M. 84, 85–86, 678 P.2d 712, 713–14 (Ct.App.1984) and *Webb v. Fox*, 105 N.M. 723, 725, 737 P.2d 82, 84 (Ct.App.1987). However, in enunciating a new test for standing, the New Mexico Supreme Court in *De Vargas* explicitly overruled *Ruidoso* and its progeny. *De Vargas*, 87 N.M. at 473, 535 P.2d at 1324. To the extent that the Court of Appeals in *Webb* relied on the *Ruidoso* legal interest test for standing, our interpretation of *De Vargas* shows us that such reliance was misplaced. The citation to *Ruidoso* in *St. Sauver* was mere dicta, and irrelevant to the holding of the case.

Plaintiffs further assert that the test for standing in New Mexico does not distinguish between zoning and planning. *See Hotels of Distinction West*, 107 N.M. at 260, 755 P.2d at 598; *Citizens for Los Alamos, Inc. v. Incorporated County of Los Alamos*, 104 N.M. 571, 725 P.2d 250 (1986); *Hawthorne*, 88 N.M. at 124, 537 P.2d at 1386. However, Respondents contend that standing for "[a]ny person, in interest" under Section 3–19–8(A) differs from standing for "[a]ny person aggrieved" under Section 3–21–9(A). Respondents do not articulate specifically how a standing analysis differs between zoning and planning, nor do Respondents cite any authority for the proposition that different tests for standing apply in zoning and planning contexts. We thus assume there is no such authority and need not consider this argument further. *See In re Adoption of Doe*, 100 N.M. 764, 676 P.2d 1329 (1984).

■ In fact, the standing test set forth in *De Vargas* made no such distinction and applied to "suit[s] arguing the unlawfulness of governmental action." *De Vargas*, 87 N.M. at 473, 535 P.2d at 1324. *De Vargas* went so far as to see as fundamental the claimant's right to "protect himself against injury as a result of unlawful governmental action, even in the absence of a controlling statute or constitutional provision." *Id.* at 472, 535 P.2d at 1323. *But see Data Processing Serv. Org., Inc. v. Camp*, 397 U.S. 150, 154, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970). Furthermore, " '[t]here is no presumption against judicial review and in favor of administrative absoluti[sm] ... unless that purpose is fairly discernible in the statutory scheme.' " *De Vargas*, 87 N.M. at 473, 535 P.2d at 1324 (quoting *Data Processing Serv.*, 397 U.S. at 157, 90 S.Ct. at 831–32). In the instant case, both Sections 3–19–8(A) and 3–21–9(A) demonstrate the legislative intent that judicial review be attainable via appeal on the one hand and writ of certiorari on the other.

■ The type of harm alleged by Plaintiffs falls within the *Sierra Club* parameters of standing. *See De Vargas*, 87 N.M. at 472, 535 P.2d at 1323. The extent of harm alleged by Plaintiffs is less attenuated and more significant than "the trifle" required by *SCRAP*. *SCRAP*, 412 U.S. at 688, 93 S.Ct. at 2416. The threat of aesthetic, quality of life, and property harm al-

leged by Plaintiffs is also directly parallel to the type of harm which conferred standing in *Tate v. Miles*, 503 A.2d 187 (Del.Super.Ct.1986). In *Tate*, the Court held that residential property owners whose property was 1500 feet away from the rezoned land had standing to sue on the basis of assertions that the rezoning would increase noise, dirt, trash and traffic in the area. This in turn would interfere with the landowners' enjoyment of their property.

The case at hand can be distinguished from cases relied on by Respondents where standing was denied. In *Webb*, the defendant was a prospective purchaser who had neither an executed contract nor a purchase contract conditioned on the grant of the zoning request. Here, Plaintiffs have a more personal stake in the outcome of the controversy because they owned property at the time the City Council decision was rendered and they continue to own property near the proposed project. *But see Hotels of Distinction West*, 107 N.M. at 260, 755 P.2d at 598 (citing *State ex rel. Overton v. New Mexico State Tax Comm'n*, 81 N.M. 28, 462 P.2d 613 (1969)) (The plaintiff lacked standing because it had no personal stake in the outcome of the controversy.). The instant case can also be distinguished from *Citizens for Los Alamos* because unlike the appellant in *Citizens for Los Alamos*, Plaintiffs here do own property. *Citizens for Los Alamos*, 104 N.M. at 573, 725 P.2d at 252. In that case, the incorporated citizens did not have standing because they were not duly organized at the time the contested decision was rendered, nor did they own property. However, the Court expressly declined to address the issue of whether lack of property ownership in this situation would have affected standing had the incorporated citizens been duly organized.

Here, Plaintiffs have alleged sufficient threat of injury to satisfy the test enunciated in *De Vargas*. Accordingly, we reverse the district court's order that Plaintiffs lacked standing.

*Timeliness of Filing the Petition for Writ of Certiorari*

Plaintiffs contest the district court's order that the filing of the petition for writ of certiorari was untimely. The parties do not dispute that Section 3–21–9(A) limits the filing of the petition to "within thirty days after the decision is entered in the records of the clerk of the zoning authority." Nor do the parties contest that filing an appeal pursuant to Section 3–19–8 contains no such time limitation. Furthermore, the parties do not dispute that the thirty-day filing requirement will be strictly construed. *See Bolin v. City of Portales*, 89 N.M. 192, 548 P.2d 1210 (1976). However, the parties do dispute the date from which the City Council's decision triggers the thirty-day period. Plaintiffs assert that the triggering date is March 8, 1989, when the City Council passed the Amendment to the General Plan as Resolution No. 1989–13. Respondents assert the triggering date should be February 8, 1989, when the City Council decided to publish notice of the March 8, 1989 hearing rather than remanding to the UPC for another hearing at that level.

■ In assessing the finality of a decision for purposes of determining when the thirty-day statute of limitations began to run for Section 3–21–9, the New Mexico Supreme Court held that a contested zoning ordinance became final on the day it was passed, adopted, approved, and signed by the board and not on the date some five weeks later when the board approved the minutes of the former meeting. *Serna v. Board of County Comm'rs*, 88 N.M. 282, 540 P.2d 212 (1975). The Court made a similar determination in *Bolin* where the decision which triggered the statute of limitations was the final adoption of the ordinance by the City Council and not the date the appellants learned of the decision, nor the date the ordinance was first considered by the City Council. *Bolin*, 89 N.M. at 193–94, 548 P.2d at 1211–12. *See also Citizens for Los Alamos*, 104 N.M. at 572, 725 P.2d at 251 (The triggering date was the date of the County's decision to grant the contested special use permit.).

Plaintiffs argue that to find any other date except the date the City Council made

its final decision would be tantamount to forcing an individual to appeal before one is aggrieved or dissatisfied because the City Council might have voted to defeat the proposal as they had at the prior October 12, 1989 meeting. We find this argument to be both persuasive and consistent with *Bolin* and *Serna*. *Cf. Harrison v. ICX, Illinois–California Express, Inc.*, 98 N.M. 247, 647 P.2d 880 (Ct.App.), *cert. denied*, 98 N.M. 336, 648 P.2d 794 (1982) (Appeals lie only from formal written orders or judgments signed by the judge and filed in the case, or entered upon the records of the court and signed by the judge.). Accordingly, we reverse the district court's order that the petition for writ of certiorari was not timely filed.

## CONCLUSION

Based on the foregoing, we reverse the district court's order that Plaintiffs lacked standing and that the petition for writ of certiorari was not timely filed. We remand to the district court with instructions that the district court determine: (A) whether Plaintiffs' procedural due process rights were violated due to noncompliance with Section 14–9.1(E) of the Santa Fe City Code; (B) whether Section 3–19–8 applies and if so, (1) what the standard of review is; and (2) whether a supersedeas and stay were required pursuant to SCRA 12–207.

**IT IS SO ORDERED.**

ALARID and CHAVEZ, JJ., concur.