889 P.2d 234

**Lisa CORN, Claimant–Appellant,**

v.

**NEW MEXICO EDUCATORS FEDERAL CREDIT UNION and CIGNA Property and Casualty Companies, Respondents–Appellees.**

**No. 14553.**

Court of Appeals of New Mexico.

Dec. 2, 1994.

Cert. Denied Jan. 17, 1995.

George Wright Weeth, Law Office of George Wright Weeth, Albuquerque, for claimant-appellant.

David N. Whitham, Emily A. Franke, Butt, Thornton & Baehr, P.C., Albuquerque, for respondents-appellees.

Paul Maestas, Silva, Rieder & Maestas, P.C., Albuquerque.

Max J. Madrid, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, for amicus curiae N.M. Defense Lawyers Ass'n.

William H. Carpenter, Michael B. Browde, Albuquerque, for amicus curiae N.M. Trial Lawyers' Ass'n.

Robert M. Aurbach, Gen. Counsel, Sp. Asst. Atty. Gen., N.M. Workers' Compensation Admin., Albuquerque, amicus curiae.

*OPINION*

MINZNER, Chief Judge.

Worker appeals the workers' compensation judge's compensation order limiting her award of attorneys' fees to $12,500 as required by NMSA 1978, Section 52-1-54(G) (Repl.Pamp.1991) (Effective until January 1, 1991). Worker contends that the attorneys' fees cap in Section 52-1-54(G) is unconstitutional because (1) it violates her right to due process of law, (2) it violates her right to equal protection under the law, and (3) it violates her right to petition for redress. We requested amicus curiae briefs addressing Worker's equal protection challenge from the Workers' Compensation Administration (Administration), the New Mexico Trial Lawyers Association (NMTLA), and the New Mexico Defense Lawyers Association (NMDLA). Amicus participation has been very helpful. Because we find the equal protection challenge dispositive in this case, we do not address the other constitutional challenges raised by Worker. We reverse and remand.

## I.  BACKGROUND

Worker was injured on August 16, 1989, in a one-car accident while working as a courier for New Mexico Educators Federal Credit Union (Employer). Worker suffered a head injury in the accident, resulting in deficits in cognitive function. She filed her complaint after benefits were terminated and in due course was awarded compensation benefits for temporary total disability, vocational rehabilitation, and medical expenses. The matters of permanent disability and impairment were reversed.

The judge then heard Worker's request for attorneys' fees. Due to the complexity of Worker's psychological injuries and the results thereof, the judge found that Worker's attorney reasonably expended 156.3 hours on the case. The judge also found that a reasonable rate for Worker's attorney was $125 per hour; that the issues in the case were seriously contested and were above average in complexity; and that the activities of Worker's counsel were related to the ultimate benefits Worker has received. Consequently, the judge found that a reasonable fee would be $19,537.50 plus tax. However, because of the attorneys' fees cap in Section 52-1-54(G), the judge limited Worker's attorneys' fees award to $12,500. The judge also entered several conclusions regarding the cap's effects. They are:

3. The fee limitation contained in Section 52-1-54(G) places workers at an unfair disadvantage compared to employers and insurers who are not constrained by a fee cap.

4. The fee limitation contained in Section 52-1-54(G) has contributed to the reduction in the number of attorneys willing to handle workers['] compensation cases on behalf of injured workers.

5. The fee limitation contained in Section 52-1-54(G) has significantly reduced the number of experienced competent attorneys who practice workers['] compensation law before the Administration.

. . . . .

7. The statutory limit established by Section 52-1-54(G) has had a chilling effect on workers' ability to retain counsel in this workers' compensation claim.

## II.  DISCUSSION

Worker mounts a facial challenge to the statute and contends that the application of the $12,500 attorneys' fees cap in this case

violates the equal protection clause of the state and federal constitutions in two ways. First, Worker argues that by only applying the attorneys' fees cap against Worker and not Employer, Section 52–1–54(G) puts Worker at a competitive disadvantage. Second, Worker suggests that the cap improperly discriminates against workers whose claims are complex and time-consuming, as opposed to those workers whose claims are relatively simple and quickly resolved. Although Worker asserts her equal protection claim under the state and federal constitutions, her arguments appear based primarily on the New Mexico Constitution. Our discussion is limited to article II, Section 18 of the New Mexico Constitution. We first address two preliminary matters: Worker's standing and this Court's jurisdiction.

### A. Standing & Jurisdiction

█ Because Employer's brief suggested that Worker did not have standing to raise her claims, our invitation to amici requested that they address the issue of standing. In response to our request, NMDLA and the Administration assert that Worker does not have standing to raise an equal protection challenge because she is still represented by counsel. Essentially, they maintain that Worker lacks standing because she cannot demonstrate a real risk of future injury resulting from the application of the attorneys' fees cap in this case. We disagree.

We believe that the Administration and NMDLA take the concept of standing too far by suggesting that Worker must actually proceed without counsel, and suffer prejudice as a result, before she can raise a constitutional challenge to the attorneys' fees cap. As their position underscores, all that is required for standing is that Worker demonstrate a real risk of future injury due to the attorneys' fees cap. *See De Vargas Sav. & Loan Ass'n v. Campbell*, 87 N.M. 469, 473, 535 P.2d 1320, 1324 (1975) (standing exists if complainant "is injured in fact or is imminently threatened with injury, economically or otherwise"); *Ramirez v. City of Santa Fe*, 115 N.M. 417, 420–22, 852 P.2d 690, 693–95 (Ct.App.1993) (discussing *De Vargas*). The

extent of injury required is "slight." *Ramirez*, 115 N.M. at 420, 852 P.2d at 693.

The Rules of Professional Conduct contemplate allowing attorneys to withdraw if they are not being paid for their services. *See* SCRA 1986, 16–116(B)(5) (Repl.Pamp.1991) (counsel may withdraw from representation when it will result in unreasonable financial burden on lawyer). The judge has characterized the issues in this case as seriously contested and of above-average complexity. Worker may be required to pursue matters of impairment and permanent disability without the aid of counsel because the cap prohibits her from compensating counsel any further. Under these circumstances, we believe Worker has demonstrated a real risk of future injury from the cap. Thus, we hold that Worker has standing to raise the constitutional claims she asserts in this appeal. *See De Vargas Sav. & Loan Ass'n*, 87 N.M. at 473, 535 P.2d at 1324; *Ramirez*, 115 N.M. at 422, 852 P.2d at 695.

█ Our resolution of the standing issue raises an issue of this Court's jurisdiction. That is, if there are issues remaining to be decided, is the order from which Worker has appealed final? *See generally Principal Mut. Life Ins. Co. v. Straus*, 116 N.M. 412, 413–14, 863 P.2d 447, 448–49 (1993) (order leaving substantive issues in the case, e.g., damages, to be decided later was not "final order" for purposes of appeal). Our answer is that there are no issues presently remaining to be decided in this case. The case is over for all practical purposes unless one of the parties seeks to resurrect it, for example by alleging that the temporary disability is ended. *Cf. Thornton v. Gamble*, 101 N.M. 764, 768, 688 P.2d 1268, 1272 (Ct.App.1984) (domestic relations matter is final for purposes of appeal when all issues raised by the pleadings currently before the court are resolved).

### B. Level of Scrutiny

As the first step in embarking on an equal protection analysis, courts usually decide the level of scrutiny to apply to the challenged statute. We recently identified four levels of scrutiny afforded by the cases, and we adopted a four-tiered analysis in evaluating

challenges presented under the New Mexico Constitution. *See Alvarez v. Chavez,* 118 N.M. 732, 886 P.2d 461 (Ct.App.1994). We recognize that the Supreme Court more recently decided an equal protection case that applied the traditional three standards of review. *See Marrujo v. New Mexico State Highway Dep't,* 118 N.M. 753, 757–58, 887 P.2d 747, 750–51 (1994). Nonetheless, because the Supreme Court did not mention *Alvarez,* we do not interpret the *Marrujo* opinion to be a rejection of concepts set forth in *Alvarez.* In particular, we continue to believe that a four-tiered analysis based expressly on the New Mexico Constitution is a useful framework for consideration of equal protection issues in this state and is consistent in approach with prior New Mexico Supreme Court cases. We therefore use it in this case. In determining the appropriate level to afford in this case, we look to the classification made and the interest affected. *Alvarez,* 118 N.M. at 738–39, 886 P.2d at 467–68.

■ In this case, the legislature has separated workers' compensation claimants from all other litigants before either courts or agencies and has also drawn a distinction between workers and employers under the Workers' Compensation Act. As in *Alvarez, id.* at 737, 886 P.2d at 466, and *Richardson v. Carnegie Library Restaurant, Inc.,* 107 N.M. 688, 696, 763 P.2d 1153, 1161 (1988), on which *Alvarez* relied, we need not examine higher standards of scrutiny if we find that the challenged classification fails under a lower standard. We believe that the classifications and interests at issue here call for scrutiny under at least the heightened rational-basis test, and for the reasons explained in the next section of this opinion the classifications fail that test.

■ The classifications made by the statute set apart workers injured in the course and scope of their employment and set apart workers from employers as litigants under the Workers' Compensation Act. *See* NMSA 1978, §§ 52–1–1 to 52–5–22 (Repl. Pamp.1991 & Cum.Supp.1994) (providing comprehensive scheme of workers' compensation benefits and providing that those benefits are exclusive remedies for workers injured in the course and scope of employment). The interests involved will include in all cases the workers' interest in recovering the minimal compensation benefits allowed by the statute. Those benefits are designed to keep the injured workers and their families off the welfare rolls and to make industry bear the burden of workers' injuries. *Sanchez v. M.M. Sundt Constr. Co.,* 103 N.M. 294, 296–97, 706 P.2d 158, 160–61 (Ct.App. 1985). The interests will sometimes include the interest in recovering these minimal benefits in lieu of tort damages. *See id.* (worker recovers compensation and employer is immune from tort liability).

In *Alvarez,* the interests involved, access to the ballot and livelihood, were sufficient to require heightened rational-basis review without separately considering whether a sensitive class was involved. In *Richardson,* both the class and the interest were considered. In this case, like *Richardson,* we consider both the class and the interests.

We believe that the combination of the sensitivity of the class when considering the interest involved requires heightened rational-basis scrutiny in this case. Here, the legislature has created two classes of workers' compensation litigants—those whose attorneys' fees are unlimited (employers) and those whose fees are limited (workers). The legislature has further created a distinction between those workers whose cases generate fees above the cap on account of bad faith and those whose fees exceed the cap on account of other kinds of employer resistance to paying compensation benefits. The interest involved is a worker's right to fully participate in a remedial scheme designed to compensate for work-related injuries. This interest and the classifications are sufficiently close to those recognized in *Richardson* to apply heightened rational-basis review to the classifications made by the statute.

### C. Application of Level of Scrutiny

■ As we said in *Alvarez,* the major difference between traditional rational-basis review and heightened rational-basis review is that, under the former, a statute will be upheld if there is any conceivable basis to support it whether or not that basis has a

foundation in the record, whereas under the latter, there must be either a factual foundation in the record to support the basis or a firm legal rationale to support the basis. *Alvarez,* 118 N.M. at 740, 886 P.2d at 469. We first review the basis under the legal test and then under the factual test.

### 1. *Section 52-1-54(G): Its Purposes and Effects*

In evaluating Worker's constitutional challenges to Section 52-1-54(G), we begin by acknowledging the deference we owe the legislature's judgment in making classifications, as well as in devising procedures to be followed by administrative agencies. *See generally* Joseph Tussman & Jacobus tenBroek, *The Equal Protection of the Laws,* 37 Calif.L.Rev. 341, 344 (1949) ("[The United States Supreme Court] has resolved the contradictory demands of legislative specialization and constitutional generality by a doctrine of reasonable classification."); *National Ass'n of Radiation Survivors v. Derwinski,* 994 F.2d 583, 591 (9th Cir.) (due process principles accord legislatures considerable flexibility in devising processes for dispute resolution), *cert. denied,* —— U.S. ——, 114 S.Ct. 634, 126 L.Ed.2d 592 (1993). In evaluating the reasonableness of a legislative classification, we defer to the legislature because under our system of government the legislature has the primary responsibility for making the kinds of political, economic, and social judgments that typically underlay statutory classifications. Nevertheless, courts provide a unique check on the legislature's role. By constitutional mandate, courts monitor the legislature's obligations to provide equal protection, and thus its duty to avoid unreasonable classification.

> The Constitution does not require that things different in fact be treated in law as though they were the same. But it does require, in its concern for equality, that those who are similarly situated be similarly treated. The measure of the reasonableness of a classification is the degree of its success in treating similarly those similarly situated.

Tussman & tenBroek, *supra,* at 344 (footnote omitted).

The court performs its role as check or monitor at least in part by identifying the legislature's purpose in classifying.

> [W]here are we to look for the test of similarity of situation which determines the reasonableness of a classification? The inescapable answer is that we must look beyond the classification to the purpose of the law. A reasonable classification is one which includes all persons who are similarly situated with respect to the purpose of the law.

*Id.* at 346. Of course, the court must initially determine what classifications the legislature has made. In New Mexico, we must analyze a statute that combines a well-accepted distinction as well as a new classification. We first examine the former.

### a. *Historical Context*

For many years, New Mexico has regulated attorneys' fees for representing workers in seeking compensation and has provided that employers would pay the fees for workers who prevailed in collecting compensation through court proceedings. *See generally* William B. Kelly, *Workmen's Compensation,* 13 N.M.L.Rev. 495, 495–501 (1983) (discussing recent cases and providing a short history of the state of the law). Prior to the most recent set of amendments, the statute provided "that a reasonable fee for claimant's attorney shall be taxed as part of the costs against the employer where the jurisdiction of the court is invoked to approve a settlement of a compensation claim." *See Superintendent of Ins. v. Mountain States Mut. Casualty Co.,* 104 N.M. 605, 606, 725 P.2d 581, 582 (Ct.App.1986) (construing NMSA 1978, Section 52-1-54(C) (Orig.Pamp. & Cum.Supp.1985)). The statute also permitted the claimant to recover reasonable attorneys' fees payable by the employer when he or she collected compensation through court proceedings. *See Woodson v. Phillips Petroleum Co.,* 102 N.M. 333, 336, 695 P.2d 483, 486 (1985).

In *Woodson,* the Supreme Court described one of the main purposes in regulating the amount an attorney may charge for representing a worker seeking compensation benefits: "to avoid excessive legal costs and

thereby avoid unduly burdening employers and their insurers." *Id.* at 337, 695 P.2d at 487. This Court has recognized another main purpose: "to protect the injured worker." *Mountain States Mut. Casualty Co.,* 104 N.M. at 607, 725 P.2d at 583. "Some provision for attorneys' fees for the injured worker is necessary in a state where the services of an attorney are required to obtain workmen's compensation. Otherwise, any compensation a worker received would be substantially reduced by his [or her] legal fees." *Id.* at 608, 725 P.2d at 584. Under the prior statutory scheme, we saw no public policy reason to relieve insurance carriers of their legal expenses. *Id.*

In that respect, there seems to have been a measure of consensus among the various workers' compensation statutory schemes. "The fees of the employer's or insurer's counsel, since they have no immediate impact on net benefits, are not ordinarily supervised or limited." *Id.* at 607, 725 P.2d at 583 (citation omitted). "We believe that the Legislature could properly determine that employers and compensation carriers, not laboring under the same economic difficulties as the claimant, are not in need of similar protection." *Crosby v. State Workers' Compensation Bd.,* 57 N.Y.2d 305, 456 N.Y.S.2d 680, 684, 442 N.E.2d 1191, 1195 (1982). "No similar concern exists with regard to employers and the fees they pay for legal services related to workers' compensation claims." *Hudock v. Virginia State Bar,* 233 Va. 390, 355 S.E.2d 601, 604 (1987).

In fact, the distinction the legislature made between employers and workers under prior law survived a challenge made under the federal constitution. *See New Mexico State Highway Dep't v. Bible,* 38 N.M. 372, 375, 34 P.2d 295, 297 (1934) (sustaining the attorneys' fees provision against a claim it denied equal protection and due process). A number of other courts have sustained a similar distinction or classification against similar challenges. *See Samaha v. State,* 389 So.2d 639 (Fla.1980); *Burris v. Employment Relations Div./Dep't of Labor & Indus.,* 252 Mont. 376, 829 P.2d 639 (1992); *Crosby,* 456 N.Y.S.2d at 684, 442 N.E.2d at 1195; *Hudock,* 355 S.E.2d at 604. In justifying or explaining similar schemes, courts have relied on the legitimacy of the legislature's objective of protecting a worker against his or her own improvidence and the rationality of regulating only workers' attorneys as a reasonable method of furthering the objective. *See Samaha,* 389 So.2d at 640–41 (sustaining scheme that prohibited collecting a fee from a workers' compensation beneficiary unless approved by judge of industrial claims against challenge made under state and federal constitutional provisions guaranteeing rights in property, due process of law, and equal protection of the law on basis that statute served a legitimate state interest in affording claimant necessary minimum living funds); *Burris,* 829 P.2d at 641 (sustaining scheme that gave Department of Labor and Industry authority to require a worker's attorney to submit a contract of employment and to regulate fee payable pursuant to contract against due process and equal protection challenges under federal law on basis that the scheme "is rationally related to the government's legitimate interest in protecting the claimant's net benefits"); *Crosby,* 456 N.Y.S.2d at 682–84, 442 N.E.2d at 1193–95 (sustaining scheme requiring approval by the Workers' Compensation Board of a worker's attorneys' fees against state and federal constitutional challenges; federal equal protection challenge rejected on ground that statute "clearly promotes the over-all objective of ensuring adequate economic relief to the employee or his family"); *Hudock,* 355 S.E.2d at 604 (sustaining public reprimand for collection of fee in addition to fee set by Industrial Commission; statute giving Commission full power to control award of fees and Commission practice of controlling only workers' attorneys' fees sustained, notwithstanding federal equal protection challenge, on basis that scheme protects claimants and ensures adequate relief to claimant and his or her family).

In analyzing this history, we conclude that for many years our statute, like many others, made two relatively simple distinctions between employers and workers. The statute regulated the fees of the latter but not the former, and employers provided prevailing workers reasonable fees. The scheme is no longer that simple.

### b. *Workers' Compensation Reform*

The legislature began a major overhaul of the New Mexico statutory scheme in 1986. Section 52–1–54(G) dates from that time, although it has evolved and continues to change, like other provisions. The provision relevant to the present case is Section 52–1–54(G) (Effective until January 1, 1991).

Section 52–1–54(G) (Effective until January 1, 1991) provides as follows:

Neither the workers' compensation judge nor the courts on appeal shall award an amount of attorneys' fees on behalf of a claimant in excess of twelve thousand five hundred dollars ($12,500). This limitation applies whether the claimant has one or more attorneys representing him and applies as a cumulative limitation on compensation for all legal services rendered in all proceedings and other matters directly related to a single accidental injury to the claimant. The workers' compensation judge may exceed the maximum amount stated in this subsection in awarding a reasonable attorney's fee if he finds that an employer acted in bad faith with regard to handling the injured worker's claim and the injured worker has suffered economic loss as a result thereof. As used in this subsection, "bad faith" means conduct by the employer in the handling of a claim which amounts to fraud, malice, oppression or willful, wanton or reckless disregard of the rights of the worker. Any determination of bad faith shall be made by the workers' compensation judge through a separate fact-finding proceeding.

Another relevant provision is as follows:

H. The payment of attorneys' fees determined under this section shall be shared by the worker and the employer, with the worker paying one-fourth of the amount and the employer paying three-fourths of the amount.

Section 52–1–54(H).

At its most general level, Section 52–1–54(G), like the overall provision of which it is a part and like its predecessors, regulates the amount an attorney may charge a worker for representing that worker in a claim for compensation benefits. However, in its present form the statute not only regulates that amount, but it also limits, or caps, the amount any lawyer may receive for representing a worker. Section 52–1–54(G) permits the workers' compensation judge to exceed the cap only on a showing that the employer has acted in bad faith in handling the worker's claim. Section 52–1–54(H) requires the employer to pay most, but not all, of the fee awarded. These are new features since *Bible* was decided, and in combination they result in a more complicated classification than we had, as well as a scheme that is unique to New Mexico. *See* 4 Arthur Larson, *The Law of Workmen's Compensation*, Table 18B, App. B–18B–1 to –3 (1994).

The distinction the statute makes among workers themselves is entirely new, dating from the series of changes in the New Mexico workers' compensation system that began in 1986. Prior to 1986, the maximum amount an attorney might receive for representing a worker in securing compensation was controlled by the discretion of the district court judge, subject to appellate review for abuse of that discretion. Under the present statute, however, workers whose attorneys' fees exceed $12,500 cannot recover those fees unless they can show bad faith on the part of the employer. Further, if they cannot show bad faith, workers' counsel may not recover more than $12,500, because the statute precludes any recovery other than as provided by statute. That is, a worker may not agree to pay his or her counsel more than the statute allows the worker to recover from the employer for attorneys' fees or requires the worker to pay from his or her own pocket. Thus, the new statute creates at least two categories of workers; it distinguishes workers whose claims have been handled in bad faith from those whose claims have been resisted in good faith. Further, the statute also distinguishes workers from employers in a new way. Where formerly it distinguished workers from employers by providing for workers, but not employers, to recover attorneys' fees if they succeeded in establishing liability, now the statute also distinguishes workers from employers by capping the attorneys' fees their counsel may receive without limiting those employers' counsel may receive.

None of the rationales offered by those who support the cap justify all of the distinctions made. We have previously justified requiring employers to pay their employees' attorneys' fees in workers' compensation suits on the ground that employees lack the financial resources to pay the fees. *See Mountain States Mut. Casualty Co.*, 104 N.M. at 608, 725 P.2d at 584. Other states have reached similar conclusions. *See Alford v. Republic Steel Corp.*, 12 Ohio App.3d 145, 148, 467 N.E.2d 567, 571 (1983); *Hodgeman v. Jard Co.*, 157 Vt. 461, 599 A.2d 1371 (1991); *Seattle Sch. Dist. No. 1 v. Department of Labor & Indus.*, 116 Wash.2d 352, 804 P.2d 621 (1991) (en banc). "The state has a legitimate interest in seeing employees compensated for work-related injuries. Taxing costs against employers who contest claims ultimately determined to be valid is a procedure rationally related to the state's interest in seeing those injured employees compensated. Such a regulation does not violate equal protection." *Alford*, 12 Ohio App.3d at 148, 467 N.E.2d at 571.

> We are satisfied that the Legislature could reasonably have determined that the allocation of fees set out in [the statute allowing prevailing workers' compensation claimants to recover attorneys' fees] furthers the purpose of workers' compensation because employers and their insurance carriers are better able to bear the expense of hearings than employees.

*Hodgeman*, 599 A.2d at 1373. "Employers and employees are not similarly situated with respect to the purpose of the Industrial Insurance Act attorney fee provision. Employees are allowed to recover attorney fees in order to avoid diminution of their award." *Seattle School Dist. No. 1*, 804 P.2d at 627.

The distinctions made in the current version of Section 52–1–54(G) appear to have at least some different purposes than those that led to the older scheme of (a) requiring employers to pay prevailing workers' attorneys' fees, and (b) controlling the size of the fees through a mechanism of court approval. The key difference is the cap. That cap handicaps workers vis-a-vis employers in the adjudicatory process which we have said requires the assistance of counsel for which employers should pay a reasonable sum, *see Herndon v. Albuquerque Pub. Sch.*, 92 N.M. 287, 288, 587 P.2d 434, 435 (1978), and for which the legislature has provided significant attorneys' fees. We do not understand how the cap serves a legitimate purpose or, if the purpose is legitimate, how the cap rationally advances it.

The capping of attorneys' fees for workers and not for employers might be said to stem from the different socio-economic situation of workers and employers. That is, the legislature might have thought that workers, rather than employers, required protection, particularly since workers will now contribute one-quarter of the fees. However, this protection for workers is absent when an employer acts in bad faith. It would seem that protection for workers should be in place regardless of whether employers' reasons for driving up attorneys' fees are bad faith activities or good faith resistance to the claim.

Thus, it seems that it is the employer for whose benefit the cap appears to operate. However, providing predictability for employers at the risk of chilling a worker's decision to pursue recovery seems to be an incongruous element of a generally humanitarian scheme. Assuming that the goal is reduction of litigation costs, and without considering the fairness of imposing the burden of reducing costs on only one side, we cannot understand how capping attorneys' fees only for workers achieves the desired goal, except in an arbitrary manner.

In fact, the cap appears to discourage representation of workers by counsel. The judge's findings in this case indicate that it has had that effect. We conclude that the cap places a premium upon or creates an incentive for pro se representation during all or part of the administrative proceeding. *Cf. Murphy v. Commissioner of Dep't of Indus. Accidents*, 415 Mass. 218, 612 N.E.2d 1149 (1993) (even though the legislature has an interest in reducing the cost of administrative proceedings, attaching a filing fee to litigants with counsel but not to those without does not pass constitutional scrutiny under the minimum, rational basis standard of review). We do not know whether to characterize the effect as an objective or as a means

to the objective of reducing costs. We do not think, however, that we need to decide this question.

Creating a system in which employees may seek government benefits but must do so without counsel is neither an illegitimate purpose nor an irrational means to other, legitimate purposes. *See National Ass'n of Radiation Survivors*, 994 F.2d at 588–90. Nevertheless, in our system, the attorneys' fees cap handicaps one side of an adversarial proceeding, and thus imposes the risk of appearing without representation solely upon one class of litigants, the class we have traditionally thought of as disadvantaged in these kinds of proceedings and the class in whose interest the legislation has been created. Further, the burden rests on only a portion of that class, those who cannot establish employer bad faith. If the handicap is itself an objective, we are not persuaded it is a legitimate objective. If the handicap is a means to an end, we conclude that the statutory cap is within what the *Murphy* Court has characterized as imposing "additional burdens on a class of litigants in an arbitrary or capricious manner." 612 N.E.2d at 1155.

As the *Murphy* Court indicates, the legislature has a legitimate interest in reducing the cost of an administrative proceeding, in deterring frivolous claims, and in lowering the cost of litigation for financially disadvantaged litigants. *Id.* 612 N.E.2d at 1156. Nevertheless, the classification(s) made must bear a rational relationship to legitimate goals. *Id.* We conclude that the relationship between purposes and means in Section 52–1–54(G) is " 'so attenuated as to render the distinction[s] arbitrary or irrational.' " *Id.* (quoting *Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 446, 105 S.Ct. 3249, 3258, 87 L.Ed.2d 313 (1985)).

### 2. *Section 52–1–54(G): Its Actual Effects*

We next examine the rationale advocated by the proponents of the statute to determine whether there is a factual basis in the record supporting it. The proponents offer as a rational basis that the cap on workers' attorneys' fees, together with other innovations in the reforms beginning in 1986, serves to keep down the costs of the entire workers'

compensation system. If we were reviewing this case under traditional minimal scrutiny, pursuant to which we are permitted to imagine or speculate about the basis, we might be able to say that the legislature could have rationally believed that capping the attorneys' fees of the protagonist in litigation would result in a lowering of the cost of all legal services. However, under heightened rational-basis review, there must be a factual basis in the record to suggest that this is indeed the case. Apart from our own doubts about whether such a cap could have the desired effects, the data provided to us by the Administration show that fees over the cap are present in such a minuscule portion of the cases (less than one-fifth of one percent) that the effects would have to be de minimis. Thus, far from supporting the purported rational basis, the data provided conclusively negate it.

### D. *Severability*

■ The next issue we must address is what effect our ruling that Section 52–1–54(G) is unconstitutional has on the balance of the statute. *See generally State v. Spearman*, 84 N.M. 366, 368, 503 P.2d 649, 651 (Ct.App.1972) (discussing the enforceability of a partially invalid statute). In *Spearman*, this Court noted that:

> before a partially invalid statute . . . can be held to still be in force it must satisfy three tests. First, the invalid portion must be able to be separated from the other portions without impairing their effect. Second, the legislative purpose expressed in the valid portion of the act must be able to be given effect without the invalid portion. And, thirdly, it cannot be said, on a consideration of the whole act, that the legislature would not have passed the valid part if it had known that the objectionable part was invalid.

*Id.* Based on the following, we conclude that Section 52–1–54 can be enforced, notwithstanding our decision that Section 52–1–54(G) is unconstitutional as written.

Section 52–1–54 contains a number of references to Subsection G. *See, e.g.*, § 52–1–54(C) ("a reasonable fee" for the services of the attorney shall be "fixed by the workers'

compensation judge ... subject to the limitation of Subsection G of this section."). If Subsection G is to be eliminated, these references authorize a reasonable fee without limitation. We see no reason why the balance of Section 52–1–54 cannot be given effect without Section 52–1–54(G), or how the purposes expressed in those sections are frustrated by the deletion of Section 52–1–54(G). Thus, we conclude that the first two parts of the Spearman test are satisfied.

Finally, we address the issue of whether the legislature would have passed the balance of Section 52–1–54 had it known that Subsection G was objectionable. Here we are guided by the legislature's subsequent action.

The legislature has since amended the attorneys' fees cap to apply equally to workers and employers. See NMSA 1978, § 52–1–54(I) (Repl.Pamp.1991) (Effective January 1, 1991). Nothing in this opinion should be construed to suggest that Section 52–1–54(I) is constitutional or unconstitutional under an equal protection analysis similar to the one we announce today. That provision is not before us. However, the enactment of that provision is some indication that the legislature would have enacted Section 52–1–54 even had it realized a portion was invalid. Further, the fact that Section 52–1–54 was not concerned about protecting workers from contributing potentially large amounts to their attorneys in cases of employer bad faith indicates to us that the provision requiring such contribution would also have been enacted by the legislature. Finally, we take judicial notice of the long-standing provision in New Mexico for reasonable attorneys' fees to be awarded a prevailing worker in a workers' compensation action, with fees to be paid by that worker's employer. We conclude that the third Spearman test is satisfied as well.

## III. CONCLUSION

We hold that Section 52–1–54(G) is unconstitutional. Accordingly, we reverse and remand this case to the judge with instructions to vacate the attorneys' fees award portion of the compensation order and to reconsider the attorneys' fees award that is appropriate in this case in light of its prior findings, the effort expended by counsel on appeal, as well as in proceedings before the Administration subsequent to the two hearings of which we have a record in the present appeal.

IT IS SO ORDERED.

PICKARD, J., concurs.

APODACA, J., specially concurs.

APODACA, Judge, specially concurring.

I agree with the majority in result only—that we hold the attorneys' fee cap in NMSA 1978, Section 52–1–54(G) (Repl.Pamp.1991) (Effective until January 1, 1991) unconstitutional and reverse. I disagree with the majority, however, on how we reach this result. I believe that intermediate scrutiny, or "middle-tier" review, should be applied to evaluate the constitutionality of the attorneys' fee cap. Under an intermediate scrutiny analysis, the cap is facially unconstitutional.

## A. Level of Scrutiny

Initially, I am not convinced of the vitality in New Mexico of the "heightened-rational basis" test (the fourth-tier review analysis) applied by the majority in this case. Although this Court adopted such an analysis in Alvarez v. Chavez, 118 N.M. 732, 886 P.2d 461 (Ct.App.1994), I believe that decision may have misinterpreted various United States Supreme Court cases as implicitly recognizing such a level of review. Specifically, Alvarez cited City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985), and other federal cases, for the proposition that the United States Supreme Court used a "heightened-rational basis" test in some cases. The United States Supreme Court, however, later expressly denied that it had either created or utilized a new, fourth-tier level of review, stating that it did not "purport to apply a different standard of rational-basis review." Heller v. Doe by Doe, — U.S. —, —, 113 S.Ct. 2637, 2643, 125 L.Ed.2d 257 (1993).

More importantly, approximately one month after this Court decided Alvarez, our Supreme Court issued its opinion in Marrujo v. New Mexico State Highway Transporta-

*tion Department,* 118 N.M. 753, 757, 887 P.2d 747, 751 (1994), which stated that "the Court will *apply one of three standards of review:* strict scrutiny; intermediate scrutiny (also known as substantial, heightened, or high review); and minimal scrutiny (also known as the rational basis test)." (Emphasis added.) The Court made no mention of a "heightened-rational basis" test or of four levels of review. To the contrary, the Court expressly recognized only three levels of review. Thus, in light of these statements by our own Supreme Court, I am unsure of the viability in our state of the fourth-tier review announced in *Alvarez.* Nevertheless, irrespective of the viability of the "heightened-rational basis" test in New Mexico, I do not believe that any "rational basis type" analysis is appropriate in this case. Rather, the proper test should be intermediate scrutiny.

I have so concluded based on our Supreme Court's decisions in *Trujillo v. City of Albuquerque,* 110 N.M. 621, 798 P.2d 571 (1990), and *Richardson v. Carnegie Library Restaurant, Inc.,* 107 N.M. 688, 763 P.2d 1153 (1988). Equal protection challenges to legislative classifications that infringe on "substantial and important individual interest[s]" or that impose burdens on a class of individuals sufficiently " 'sensitive' ... to the injustice [being] wrought," must be analyzed under intermediate scrutiny. Intermediate scrutiny is "aimed at legislative classifications infringing important but not fundamental rights, and involving sensitive but not suspect classes." *Richardson,* 107 N.M. at 693, 763 P.2d at 1158. As our Supreme Court recognized in *Richardson,* the right of access to the courts is an implicit fundamental right. *Id.* at 692, 763 P.2d at 1157. Additionally, the Supreme Court indicated that one aspect of the right of access to the courts or of the right to petition for redress of grievances is the right to recover monetary damages. *See Trujillo,* 110 N.M. at 624, 798 P.2d at 574. Similarly, I believe that a worker's right to retain and compensate counsel is another aspect of the fundamental right of access to the courts. Applying our Supreme Court's holdings in *Richardson* and *Trujillo,* I would hold that Worker's right to retain and compensate the counsel of her choosing is one aspect of the right of access to the

courts, and as such, it is an important and substantial right that is entitled to intermediate-level review.

My conclusion that intermediate scrutiny is the appropriate level of review is supported by our Supreme Court's recent decision in *Coleman v. United Engineers & Constructors, Inc.,* 118 N.M. 47, 878 P.2d 996 (1994). There, the Court explained that *Richardson* and *Trujillo* were cases "involving 'a limitation on the potential amount of recovery, rather than ... purely procedural matters impinging on the right of access to the courts.' " *Coleman,* 118 N.M. at 50, 878 P.2d at 999 (citations omitted). Under *Coleman,* cases involving the potential amount of recovery should be analyzed under the intermediate scrutiny test, while cases involving procedural limitations, such as a statute of repose, should be analyzed under the rational basis test. Because this case concerns a limitation on the recovery, rather than a procedural limitation, *Coleman* dictates that we apply the intermediate scrutiny test.

In its amicus brief, the Workers' Compensation Administration (Administration) recognized that workers have a substantial and important right to have counsel represent them in workers' compensation proceedings. Because Worker has been represented by counsel to the present, however, the Administration suggests that the cap has not infringed on her right to have counsel represent her. However, Worker has demonstrated that her workers' compensation claim contemplates additional proceedings; in fact, her claim has already resulted in some proceedings following the Compensation Order at issue in this appeal. Because she has already exceeded the attorneys' fee cap provision of Section 52–1–54(G), the cap is impacting on her access to the courts even though she has already had *some* access to the courts. Therefore, I would conclude that the effect that the cap has in limiting access to the courts justifies intermediate scrutiny in the same way that the damages cap in *Trujillo* and *Richardson* received intermediate scrutiny as related "access to the courts" rights of ample importance and substantial interest. *See Trujillo,* 110 N.M. at 624–26,

798 P.2d at 574–76; *Richardson,* 107 N.M. at 698, 763 P.2d at 1163.

## B. Application of Intermediate Scrutiny

Application of intermediate scrutiny requires this Court to determine if the classification at issue is "substantially related to an important state interest." *Richardson,* 107 N.M. at 695, 763 P.2d at 1160. Therefore, when applying intermediate scrutiny, this Court must examine (1) the governmental interests served by the Section 52–1–54(G) attorneys' fee cap, and (2) whether the classifications under the statute bear a substantial relationship to any such important interests.

Despite the amicus New Mexico Trial Lawyers' Association's (NMTLA) argument to the contrary, I believe that the state interests that may be promoted by the attorneys' fee cap, as identified by the Administration, are "important" state interests under an intermediate scrutiny analysis. Specifically, I find that the legislature's desire to limit the amount of litigation in workers' compensation cases and its desire to enable insurance companies to predict the payments they must make for a worker's attorney's fees are important state interests in light of the widely perceived "workers' compensation crisis" in this state and nationally. Even though I believe that the attorneys' fee cap is aimed at furthering important state . . . interests, that "does not necessarily imply that the classification is 'substantially related' to interest[s] so identified." *Trujillo,* 110 N.M. at 628, 798 P.2d at 578. Thus, the real question in this appeal narrows down to whether the attorneys' fee cap is substantially related to achieving the important state interests noted above.

Intermediate scrutiny requires this Court to assess " 'the importance of the state interest[s] by balancing it against the burdens imposed on the individual and on society.' " *Id.* at 629, 798 P.2d at 579 (quoting Laurence H. Tribe, *American Constitutional Law* § 16–32, at 1602 (2d ed. 1988)). "An indirect means by which courts may assess this balance is to determine whether alternatives exist that would not burden protected interests as heavily as the classification scheme chosen." *Id.* Indeed, our Supreme Court has recognized that "perhaps the most objective method by which a court may assess the balance struck by the legislature consists in determining the extent to which the government's goals might be advanced by means that burden protected interests less than the means chosen." *Id.* at 630, 798 P.2d at 580.

When a less restrictive means analysis is applied to this case, it becomes apparent that the attorneys' fee cap is not substantially related to the important state interests that it was designed to address. In essence, the attorneys' fee cap attempts to achieve its goals by limiting only the amount of attorneys' fees that Worker may pay her attorney. In effect, the cap prohibits injured workers from paying the general market rate for legal services, while permitting defendant employers and insurance companies to pay whatever is necessary to obtain high quality representation. What this does is to place a worker at a competitive disadvantage, and the legal contest becomes a lopsided mismatch with injured workers on the losing end. As the workers' compensation judge found below, one of the largest impacts of the attorneys' fee cap is that it discourages attorneys from practicing in the workers' compensation field. *See Texas Workers' Compensation Comm'n v. Garcia,* 862 S.W.2d 61, 100 (Tex.Ct.App.1993) (similar attorneys' fee cap statute found unconstitutional because the workers' compensation act effectively created a system that required legal representation, but then effectively denied such representation to workers through an attorneys' fee cap).

There is no justification for a classification that seeks to achieve the state's interests by burdening the legal fees paid on behalf of workers, while immunizing the legal fees paid to employers from any such burden. In my view, for a cap to be substantially related to the goals of reducing litigation and predicting attorneys' fee payments by insurers, the legislature should have imposed the cap on both workers and employers as it did in the 1991 Workers' Compensation Act. Since the cap only seeks to achieve its goals by burdening the vulnerable class of workers, while immunizing the more powerful class of employers from the effects of the cap, the

cap fails to reflect "a reasoned judgment consistent with the ideal of equal protection" and should be ruled unconstitutional. *See Richardson*, 107 N.M. at 697, 763 P.2d at 1162. Therefore, I would hold that Section 52–1–54(G) is unconstitutional on its face because it fails to serve "state interest[s] of sufficient weight" to counterbalance the serious encroachments on "principles of equal protection and equal access to the courts." *Trujillo*, 110 N.M. at 627, 798 P.2d at 577.

Additionally, I do not believe there is any "legislative quid pro quo" with the attorneys' fee cap decision that would tip the balance in favor of finding the cap constitutional. Although it is true that workers derive some benefit from a no-fault system of benefits and that the legislature may believe it is appropriate to offset that benefit with a cap on attorneys' fee awards, employers also benefit from the no-fault system by not having to pay larger negligence awards that would probably result without a workers' compensation system that focuses on subsistence level benefits rather than on making a person whole. Since employers also receive benefits from the no-fault system, but do not have an attorneys' fee cap, I do not believe that there is "legislative quid pro quo" that would tip the balance in favor of the cap.

For these reasons, I specially concur.